## BALME *vs.* WOMBOUGH.

Contracts are to be construed and adjudged by the laws of the place where they are made, except when they are to be performed in another state or country. In such cases their validity is to be decided by the laws of the place of performance.

Yet cases involving the rate of interest, where it is stipulated in the contract at the place where the loan is made, in conformity with the law of that place, at a higher rate than is permitted by the law of the place of payment, are not within the exception, but the specified rate of interest at the place of contracting will be allowed.

Promissory notes, made and dated in Minnesota, for money there loaned and advanced, payable at a bank in the state of New York, with interest at 26½ per cent per annum, and secured by mortgage on land in Minnesota will not be declared void, by the courts of this state, or be directed to be surrendered and canceled.

THE plaintiff brings this action to compel the surrender of three certain promissory notes described in the complaint, and also demands that the notes may be declared usurious by the court. The plaintiff seeks to compel the defendant to deliver the notes either under the statute as void, or if the court shall consider them valid, then that the defendant shall be ordered to surrender the same on payment of the principal, inasmuch as the defendant wrongfully withdrew them from their place of payment, for the purpose of defeating the payment thereof. The defendant, in October, 1856, loaned the plaintiff $5000 in St. Paul, Minnesota ; $1500 of which was in specie, and $3500 in orders on New York. The plaintiff gave the defendant his promissory note for $5000, payable at the Bank of Addison in this state, where the defendant has always resided, and still resides. The note by its terms provides that the plaintiff shall pay interest at the rate of 26½ per cent per annum, with a further stipulation that in case the note is not paid at its maturity, then the principal and interest then accrued thereon shall draw interest at the rate of 60 per cent per annum. The other two notes were given in part payment of the interest as it accrued, with $484 and a note of one Sprague for $500,

Balme *v.* Wombough.

secured by a mortgage. Also, the two lesser notes have the same place for payment, draw interest at 36 per cent per annum, and also provide that in case they are not paid at maturity, then principal and interest draw five per cent per month during the time they remain unpaid. It was also in evidence that there were mortgages on lands in Minnesota given as collateral security for the payment of these notes. The interest was paid semi-annually, as above, at Addison, N. Y. When the notes fell due, the plaintiff tendered payment to the defendant by offering to the Bank of Addison, in New York, where the defendant resided, the full amount thereof, principal and interest, in gold. The defendant had withdrawn them from the bank, so that payment could not be made. The defendant, by his own act, defeated the payment of the notes, and thereby caused the contingent condition to attach, whereby the notes, by their own terms, were to draw interest at the rate of sixty per cent per annum on principal and interest, which it was insisted was a new and distinct contract, created by the act of the defendant in New York, and to be executed here.

The action was referred to a referee. On the trial it was admitted by the respective parties as evidence, that by the laws of Minnesota, as they were at the time of the loan in question, and still are, it was lawful to receive, or to agree to receive, any rate of interest agreed upon by the parties, and an agreement for any particular rate of interest could be enforced under the laws of said state of Minnesota.

The referee reported the following conclusions of law : *First.* That under the facts of this case, the law of the place where the contract was made must govern, and the notes are not, therefore, void. *Second.* That the fact of the offer to pay the notes when and where they became due, does not create any new contract, which makes the notes void for usury. *Third.* That the defendant was entitled to a judgment for his costs.

The plaintiff appealed from the judgment entered upon the report.

*Titus B. Eldridge,* for the appellant. I. The transaction was a contract made in the state of Minnesota, to be executed in New York, and the validity of the contract, according to the decisions, depends upon the law of the place where the contract is to be executed. (*Robinson* v. *Bland,* 2 *Burr.* 1077. 31 *English Law and Eq.* 443. *Andrews* v. *Pond,* 13 *Peters' U. S. Rep.* 65, 67, 78. *Fanning* v. *Consequa,* 17 *John.* 518. *Boyle & Henry* v. *Edwards,* 4 *Peters' U. S. Rep.* 111, 125. *Campbell* v. *Hines,* 6 *Dow,* 116.) (1.) The reason of this is apparent. If a contract was legal or illegal merely with reference to the place where it was made, no state could have control of its laws and would have to administer every law but its own, and Delaware or Maryland lottery contracts would be valid here if the contracts regulating the same were only made in those states. (2.) The defendant claims that there is a different rule operating in cases of contracts on loans, from that governing other contracts. The cases show no such distinction, and there is no reason sufficient for such a distinction. (3.) The rule is not to refer to the *lex loci,* except for the purpose of construction, getting at the intention of the contracting parties where the contract is to be executed in a foreign jurisdiction; and this is only done from the influence of an ancient rule, that the parties as far as the law of construction and the formal requisites of the instrument were concerned, may be presumed from the nature of things as having the customs of place and *lex loci* in view at the time of contracting, from contiguity. (4.) So the ancient common and civil law agreed that where a contract was made in a place where the law allowed an arrest, and was payable or executory in a place where the law did not authorize an arrest, no arrest can issue in such a case. (*Perkins,* 1666,)

II. The only question in the case is whether the *lex fori*

Balme *v.* Wombough.

should govern in this action, and whether the *lex fori* should be, to use the phrase of commentators, the *lex solutionis;* whether the law of this jurisdiction is that which should refer to and effect this contract of loan. Undoubtedly the state of New York has the right to make laws for its citizens and rules for its courts. The defendant resided in the state of New York at the time the contract was made, when it expired, and at the present time. The contract, by its terms, was to be executed in the state of New York. The notes were owned and held here; every incident connected with the execution or duration of the contract was in New York. The defendant claims exemption from New York law, from the simple fact that the contract was made in Minnesota, and relies upon the following cases to support his view of the case: (6 *Paige,* 630. 7 *id.* 216. 4 *Denio,* 309. 4 *Sandf.* 276. *Story's C. L.* §§ 365, 428, 436. 23 *Barb.* 79. *Andrews* v. *Herriot,* 4 *Cowen.* 508.) (1.) There is not one of the above references in point, or which goes to sustain any such proposition. They do support the theory, however, of a certain rule adopted in cases of real estate, called *lex rei sitæ.* The principle generally described by that term has been too long settled to be disputed; but that rule cannot govern this case. The fact that there were mortgages given as collateral security for the payment of these notes does not restore the notes to validity, for collaterals cannot affect the original inception of a contract of loan, because they are mere dependent incidents, and subsequent in their nature. (8 *Cowen,* 669. 15 *John.* 162.) (2.) Suppose there had been mortgages as collateral given for the payment of these notes on property in New York, Massachusetts, Indiana and Vermont, there would have been six different laws governing this contract; according to the defendant's theory, some would have partially annulled it, and New York and Vermont pronounced it void. The notes here are the principal debt, and the collaterals are mere supplementary accessions and distinct contracts merely of suretiship.

(3.) The question involved in this case was decided in the case of *Dewar* v. *Spark*, (3 *T. R.* 425.) The same question was raised in *Van Schaick* v. *Edwards*, (2 *John. Cases*, 355.) The judges were, however, equally divided in opinion, and the case was decided on another ground. The chancellor says, in *Hosford* v. *Nichols*, (1 *Paige*, 225,) that the question has never been settled in this state, but quotes the case of *Dewar* v. *Spark* in terms of approbation. So the court of errors decided, that where the parties entered into a contract in one country to be performed in another country, the amount of interest was to be ascertained with reference to the place where the contract was to be executed and not where the same was made. (*Fanning* v. *Consequa*, 17 *John.* 518. *Story's Confl. Laws*, § 296.)

Justice Story, in commenting on the decision in the case of *Chapman* v. *Robertson*, (6 *Paige*, 627,) says the decision was correct, but that the reasons set forth by the chancellor are not reconcilable with the cases. It will be noticed that no place of payment is mentioned in either the bond or mortgage in that case, and the presumption would in that case be that the money was payable at the domicil of the debtor, because there is where the default is made. (*Fanning* v. *Consequa, supra, reversing S. C. in* 3 *John. Ch. R.* 587.)

III. The defendant, by his act of withdrawing the notes from their place of payment and defeating the ability to pay them, caused the stipulation to take effect that the notes should bear interest at the rate of five per cent per month or sixty per cent per annum. This withdrawal was certainly done in this state, and by the defendant's own act. The result of this was an accomplishment or completion of one of the stipulations which must have the same force of a negotiation contract in this state, whereby the right, according to the terms of the contract, was given to receive the enormous interest of 60 per cent per annum. (1.) It can be no more lawful for a man to do an act in this state which will allow him to reserve to himself 60 per cent per annum

on a contract, than to negotiate and contract for such a reservation. (2.) There can be no doubt of the usurious nature of these notes, from the fact that they allow the commission or omission of an act in this state which completes or sets running another contract in this state of the nature of the one in suit. The act of not paying in New York, on the day of maturity of these notes, secured to the defendant an interest on the principal of 60 per cent per annum, and also 60 per cent per annum on the unpaid interest ; and that interest which was to draw such enormous interest, had accrued in the state of New York. It is very plain, from the cases and policy of our law, that no such contract is valid.

*J. C. Van Loon* and *F. C. Dininny,* for the respondent. I. The notes and mortgages were made and delivered in the state of Minnesota for a loan of money, made there also. In such a case the *lex loci contractus* must govern in reference to construction and validity. (*Chapman* v. *Robertson,* 6 *Paige,* 627. *Pratt* v. *Adams,* 7 *id.* 632. *Depeau* v. *Humphreys,* 20 *Martin's La. Rep.* 1.)

There is no pretense that the notes and mortgages in this case were made out of the state to avoid the usury laws. The plaintiff resided at St. Paul, in Minnesota, and the defendant was there at the time, and the whole transaction took place there without any thought, as appears, of avoiding the usury laws, and the transaction is entirely covered by the decisions above cited. The case of *Pomeroy* v. *Ainsworth* (22 *Barb.* 118) is a still later case. In that case the contract was made in Vermont, and the court in deciding it cited the cases in the 6th and 7th Paige, and the Louisiana case, with approbation, and said that the laws of Vermont must govern in the construction and determining the validity of the contract, at least so far as usury is concerned. The case of *Davis* v. *Garr,* in the court of appeals, (2 *Seld.* 134,) bears directly upon this question. In that case the

note was made at Apalachicola, in the state of Florida, and reserved interest at the rate of eight per cent. The defense was that the note was void for usury. The court held that the note and assumpsit of the defendant was at Apalachicola, in the state of Florida, and to defeat an action upon the note here, it was necessary for the defense to show that by the laws of Florida the note was illegal on account of usury or usury laws of that state. That the presumption in favor of the validity of the note under the laws of Florida must prevail, until the contrary be made to appear. The plaintiff in this case does not attempt to show that by the laws of Minnesota these notes or mortgages are invalid for usury; and in the absence of such proof, the presumption is in favor of the validity of such notes and mortgages under the laws by which they are to be judged. (*See* 2 *Seld. and* 22 *Barb. above cited. See also* 2 *Parsons on Cont.* 95 ; *Jacks·* v. *Nichols,* 5 *Barb.* 38.) The proof shows, and the referee finds the fact, that the rate of interest reserved was legal by the laws of Minnesota. In the case under consideration, the notes were payable at the Addison bank; but the circumstances attending the making of them and the mortgages excludes the idea that they were made in reference to the laws of this state, and fully establish the fact that they were made with direct reference to the laws of Minnesota. The parties negotiated upon the subject of interest, and such amounts of interest were mentioned between them in the negotiation, and finally reserved by the notes and mortgages, as preclude the idea that they had any reference whatever to the laws of New York. Had no rate of interest been mentioned in the notes or mortgages, the court would be authorized, perhaps, to say that New York rates must govern. In that case, it might be said, the parties had in view the rate of interest where the notes were made payable; but in a case like the one under consideration, where the rate of interest reserved is such as would render the notes and mortgages void, if made in reference to the laws of this state, it would be doing violence to all rules

Balme *v.* Wombough.

of construction as well as the known and well settled rules of determining the validity of contracts, to hold that they were made with reference to the laws this state. Chancellor Kent says it may be laid down as the settled doctrine of public law, that personal contracts are to have the validity, interpretation and obligatory force in every other country, which they had in the country where they are made. The admission of this principle is requisite to the safe intercourse of the commercial world, and to the due preservation of public and personal confidence, and it is of very general reception among nations. Parties are presumed to contract in reference to the law of the country in which the contract is made. (2 *Kent's Com.* 457.) A contract valid by the law of the place where it is made is, generally speaking, valid every where, "*jure gentium*" and by tacit assent. The "*lex loci*" controls the nature, construction and validity of the contract, (*Id.* 454;) and on this broad foundation the law of contracts, founded on necessity and commercial convenience, is said to have been originally established. If the rule were otherwise, the citizens of one country could not safely contract or carry on commerce in the territories of another. The necessary intercourse of mankind requires that the acts of parties, valid where made, should be recognized in other countries, provided they be not contrary to good morals, or repugnant to the policy and positive institutions of the state. (*See Lodge* v. *Phelps*, 1 *John. Cas.* 140 ; *Van Schaick* v. *Edwards*, 2 *id.* 358 ; 2 *Atk.* 372.)

II. The *lex situs* should govern in this case. It is well settled by the laws of every state and country, that the transfer of real estate, or the creation of any lien or incumbrance thereon, must be made according to the *lex situs*, or the law of the place where the land is situate. (*Chapman* v. *Robertson*, 6 *Paige*, 630. *Hosford* v. *Nichols*, 1 *id.* 226. *Hawley* v. *James*, 7 *id.* 213. *Abell* v. *Dougla*, 4 *Denio*, 309. *Nicholson* v. *Leavitt*, 4 *Sandf.* 276. *Story's Con. L.* §§ 365, 428, 436. 2 *Bland's Ch. R.* 146.) See also *D'Ivernois* v.

*Leavitt*, (23 *Barb*. 79,) in which the court say : " The rights relating to the acquisition, enjoyment and disposition of real property, are prescribed and regulated exclusively by the laws of the country in which the property is situated. Every community, independent and sovereign, possesses this power as an inherent and essential element of its sovereignty. No other community can interfere with the method by which real property may be acquired or lost, the tenure by which it may be held, the duration or quantity of interest in it, or the conditions to which the enjoyment of it is subject." (*See also Andrews* v. *Herriott*, 4 *Cowen*, 527, *and the cases there cited*.) It can avail the plaintiff nothing, that he waived any relief against the mortgages. By this course, it is insisted by the defendant, he waives his entire cause of action as set forth in the complaint. The evidence clearly shows that the defendant would not have loaned the money on the notes alone. He required real estate security, and it was given by the plaintiff. . The notes and mortgages form but one entire agreement. The plaintiff admits, by waiving any relief that shall affect the mortgage, that this court has no power (which is very clear upon authority) to grant any such relief, but insists upon the relief prayed for so far as the notes are concerned. If I am right in my conclusion that the note and mortgage forms but one entire agreement, (*see* 2 *John. Cas.* 360, 361,) then it follows that no such relief in reference to the notes can be granted that will not of necessity affect the mortgage ; for while they together form but one entire agreement, the notes are the principal and the mortgage the incident : the principal cannot be affected by any legal adjudication that will not in a corresponding manner affect the incident. The agreement cannot be parceled out so as to make one part subject to the laws of one state and the other part to the laws of another state. (*Van Schaick* v. *Edwards*, 2 *John. Cas.* 360, 361.)

III. This action cannot be maintained. The notes and mortgages were due at the time of the commencement of this

Balme *v.* Wombough.

action, and an action was pending in the courts of Minnesota to foreclose the mortgages. Such action is based upon the notes, which have the same relation to and connection with the mortgages that a bond would have; and any defense to the notes on the ground of usury can be made in that action, and should the defendant sell or assign them, they and each of them would be subject to any legal or equitable defense in such purchaser's hands, to which they would be subject in the hands of the defendant; hence the action is uncalled for. The plaintiff has a complete remedy, and a full opportunity of interposing his defense, which, if successful, would be quite as full a protection of his interest as the relief asked for in this action. The court in which the foreclosure was pending, was fully competent to determine the whole controversy between these parties, and that such court should be allowed to do so in this case seems to me to be eminently proper. The whole transaction was there; the property affected by the mortgages is there, and all the dealings between the parties have been with direct reference to the laws of that territory and state. It is a suspicious circumstance, at least, that the plaintiff comes from Minnesota, and seeks the aid of a court here, in a state foreign to the transaction, to restrain the defendant from pursuing his remedy for default of payment of mortgages, made in and affecting property in the state where such remedy is sought. That this court should not interfere in such case, see *Grant* v. *Quick*, (5 *Sand.* 612.) This court has not the power, and if it has, it should not exercise it to restrain proceedings previously commenced in the court of a sister state. (*Mead* v. *Merritt*, 2 *Paige*, 402. *Burgess* v. *Smith*, 2 *Barb. Ch.* 276. *Driggs* v. *Wolcott*, 4 *Cranch*, 179. *McKim* v. *Vorhees*, 7 *id.* 278.) These cases are all directly in point, and it is insisted that although this court may have the physical power to act coercively on the parties within its jurisdiction, it has frequently been decided, as will be seen by referring to the authorities, that it will not sustain an injunction bill to restrain a suit or proceedings

previously commenced in a court of a sister state. This same principle has been adopted by the supreme court of the United States, as will be seen by reference to the cases in 4th and 7th of *Cranch* referred to ; and it will be difficult to find a case wherein a court of equity in the union has deliberately decided that it will exercise the power of restraining proceedings which have been previously commenced in the courts of another state. Not only comity, but public policy, forbids the exercise of such a power. If this court should give a judgment restraining proceedings already or previously commenced in a sister state, the court of the state where such proceedings are pending might retaliate, and by process compel the plaintiff here and defendant there to relinquish his subsequently commenced action. By this course the courts of different states would be brought into collision with each other in regard to jurisdiction, and the rights of suitors would be lost sight of in a useless struggle for the ascendancy in jurisdiction.

*By the Court,* LEONARD, J. The statutes of this state direct that any evidence of debt taken or received in violation of the laws against usury, shall be declared void, and any prosecution thereon shall be enjoined, and the same shall be ordered to be surrendered and canceled. The judgment of this court must be so pronounced whenever the usury shall satisfactorily appear by the admission of the defendant, or by proof.

The promissory notes mentioned in the complaint are undoubtedly usurious, if they are to be judged by the laws of the state of New York.

They are made and dated in Minnesota, for money there loaned and advanced by the defendant to the plaintiff, payable at the Addison Bank, Steuben county, in the state of New York, two and three years after date, with interest at $26\frac{1}{2}$ per centum per annum. The plaintiff, who was the borrower, resided in Minnesota, and the defendant in the state

of New York, at the time of the loan. The notes are secured by mortgage on land in Minnesota. It should perhaps be added that the defendant had no intention to violate the laws of New York in making the loan. By the laws of Minnesota any rate of interest is allowed which may be agreed on by the parties.

The usual rule of law is that contracts are to be construed and adjudged by the laws of the place where they are made, except where they are to be performed in another state or country, and in such cases their validity is to be decided by the laws of the place of performance. (*Story's Conf. L.* §§ 242, 280. 2 *Kent's Com.* 459, *marg.*)

It appears, however, that cases involving the rate of interest, where it is stipulated in the contract at the place where the loan is made, in conformity with the law of the place, at a higher rate than is permitted by the law of the place where the payment is to be made, are not within the exception, but the specified rate of interest at the place of the contract has been allowed. (2 *Kent's Com.* 460, *marg.* 2 *Parsons on Cont.* 95. *Hosford* v. *Nichols*, 1 *Paige*, 220. *Depau* v. *Humphreys*, 20 *Martin's La. R.* 1. *Chapman* v. *Robertson*, 6 *Paige*, 627. *Pratt* v. *Adams*, 7 *id.* 632 *Pomeroy* v. *Ainsworth*, 22 *Barb.* 121. *Gibbs* v. *Fremont*, 20 *Eng. L. & E. Rep.* 555.)

I am aware that some of these cases have been criticised and doubted. (*Story's Conf. L.* § 293, *b. c. and note, and* §§ 298, 300, *and note* 1.)

Under these decisions the notes would be upheld in Minnesota. We cannot, without overruling the authorities of our own state, declare these notes to be void, or direct them to be surrendered and canceled.

. I advise the affirmance of the judgment with costs.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 3, 1862. *Ingraham, Leonard* and *Peckham* Justices.]