## JEWELL *a.* WRIGHT.

### *Court of Appeals ; June Term,* 1864.

### LAW OF PLACE.—CONFLICT OF LAWS.—USURY.

A personal contract is governed, in respect to its validity, by the law of the place where it is made, if it is not to be performed, according to the contract, elsewhere.

A note was made by one person, and indorsed by another, for the benefit of a third person. It was made, dated and payable within this State, and was taken by the indorsee into the State of Connecticut, where it was first negotiated by him at a rate of discount, which, by the law of this State, would render it wholly void, but which by the law of Connecticut would render it void only as to the interest reserved.

*Held,* that the contract was to be judged by the law of this State.

Appeal from a judgment of the Supreme Court.

This action was brought by Pliny Jewell to recover the amount of a promissory note, of which the following is a copy :

LOCKPORT, May 30, 1857.

One year after date I promise to pay to the order of Wm. J. Dunlap, four hundred dollars at Niagara County Bank, value received.

O. C. WRIGHT.

Indorsed,
  WM. J. DUNLAP,
  V. C. TAYLOR.

The defendants, who were Wright, Dunlap, and Taylor, interposed the defence of usury. Upon the trial at the Niagara Circuit, in September, 1860, the follwing facts were agreed upon : That the note was drawn in Lockport, New York, signed by Wright, and indorsed by Dunlap for the benefit of Taylor, without consideration, and to enable Taylor to raise money upon it; that it was delivered to Taylor at Lockport, and was payable at a bank in Lockport. That Taylor took the note to Hartford, in Connecticut, and there procured the plain-

tiff to guaranty it; and being thus guarranteed, Taylor procured it to be discounted by Albert Day, of Hartford, who reserved out of the face of the note $48 as interest, paying to Taylor only $352, as the entire proceeds of the note. This was the first negotiation of the note. On the maturity of the note it was properly protested, and the plaintiff having paid it by reason of his guaranty, brought this action.

The laws of Connecticut were introduced in evidence, from which it appears that the legal rate of interest in that State is six per centum per annum, and, substantially, that contracts affected by usury are void only as to the excess of interest, and that the holder of the usurious paper may recover the amount actually advanced, without interest.

Upon this state of facts the court directed a verdict for the plaintiff for the amount paid for the note by Day, with interest from maturity of the note, with costs, subject to the opinion of the court at general term. The general term gave judgment for the plaintiff on the verdict. From which judgment the defendants appealed to this court. The case in the Supreme Court is reported in 12 *Abbotts' Pr.*, 55. The case was submitted in this court on printed arguments.

*Geo. W. Cothran*, for the appellants.—In determining the validity of a contract purely personal, will the court give effect to the law of the place where the contract was made, or the law of the place where it is, by its terms, to be performed,—is the precise question to be passed upon in this case.

I. 1. In contemplation of law, this contract was made in Connecticut, for it was there that the note was first delivered as the evidence of an existing indebtedness. (Cutler *a.* Wright, 22 *N. Y.*, 472–4.)

2. In general, the validity of personal contracts is determined by the law of the place of making. In fact, it is the universal rule unless the parties stipulate otherwise. (*Story on Confl. of Laws*, §§ 317, 320, 332, 340; Curtis *et al. a.* Leavitt, 15 *N. Y.*, 227.)

3. But where the contract, by its terms, is to be performed in a State other than that in which it was made,—effect will only be given to the laws of the place of performance. 1. Such has frequently been declared to be the law of this State, by the

Supreme Court, by the Court for the Correction of Errors, the Court of Chancery, and the Court of Appeals. (Cutler *a.* Wright, 22 *N. Y.*, 472, 474, 480–9; Everett *a.* Vandryes, 19 *Ib.*, 436; Bowen *a.* Newell, 13 *Ib.*, 290; Curtis *a.* Leavitt, 15 *Ib.*, 14, 85–9, 91, 227, 296 (10); Hyde *a.* Goodenow, 3 *Ib.*, 266; Burckle *a.* Eckhart, *Ib.*, 132; Lee *a.* Selleck, 32 *Barb.*, *S. C.*, 522; Pomeroy *a.* Ainsworth, 22 *Barb.*, 120 and 127–9; Conn. Mut. Life Ins. Co. *a.* Cleveland, Colum. & Cinn. R. R. Co., 23 *How. Pr.*, 180; Thompson *a.* Ketcham, 4 *Johns.*, 285; Warren *a.* Lynch, 5 *Ib.*, 239; Thompson *a.* Ketcham, 8 *Ib.*, 189; Fanning *a.* Consequa, 17 *Ib.*, 511; Scofield *a.* Day, 20 *Ib.*, 102; Sherrill *a.* Hopkins, 1 *Cow.*, 103; Martin *a.* Hill, 12 *Barb.*, 631; Balme *a.* Wombough, 38 *Ib.*, 352; Chapman *a.* Robertson, 6 *Paige Ch.*, 627; Le Breton *a.* Miles, 8 *Ib.*, 261.) 2. It is the doctrine established in the Supreme Court and Circuit Courts of the United States. (Andrews *a.* Pond, 13 *Peters*, 85; Cox *a.* United States, 6 *Ib.*, 172; Van Reimsdyke *a.* Kane, 1 *Gall.*, 630; Emery *a.* Greenough, 3 *Dall.*, 370; Lanusse *a.* Barker, 3 *Wheat.*, 101, 146; Slacum *a.* Pomroy, 6 *Cranch*, 221; Harrison *a.* Sterry, 5 *Ib.*, 289; Pope *a.* Nickerson, 3 *Story C. C.*, 465; Strother *a.* Lucas, 12 *Peters*, 410, 436, per BALDWIN, J.; Bell *a.* Bruen, 1 *How. U. S.*, 169, 182.) 3. It has long been the law of England. (Cooper *a.* Earl of Waldegrave, 2 *Beavan*, 282; Robinson *a.* Bland, 2 *Burrow*, 1077; Melan *a.* Duke de Fitz James, 1 *Bos. & Pull.*, 138; Robinson *a.* Bland, 1 *W. Black.*, 247, 258; Rothschild *a.* Currie, 1 *Q. B.*, 43.) 4. So held at Westminster Hall. (Thompson *a.* Powles, 2 *Simons*, 194.) 5. And in the House of Lords. (Down *a.* Lippman, 5 *Clark & Fin.*, 1, 13, 19, 20; Ferguson *a.* Fyffe, 8 *Ib.*, 121; Pattison *a.* Mills, 1 *Dow & Clark*, 342, 362.) 6. It is the law of Vermont. (Pecks *a.* Mayo, 14 *Vermont*, 33.) 7. And also of Indiana. (Shanklin *a.* Cooper, 8 *Blackf.*, 41.) 8. The same is true of Massachusetts. (Powers *a.* Lynch, 3 *Mass.*, 77; Prentiss *a.* Savage, 13 *Ib.*, 20, 23, 24, per PARKER, J.; Blanchard *a.* Russell, 13 *Mass.*, 1; Carnigie *a.* Morrison, 2 *Matcalf*, 381.) 9. Also of Kentucky. (Tyler *a.* Trabue, 8 *B. Monroe*, 306; Goddin *a.* Shipley, 7 *Ib.*, 575.) 10. And of Lousiana. (Malpica *a.* McKown, 1 *Louis.*, 248; Percy *a.* Percy, 9 *Louis. Ann.*, 185.) 11. It is the settled doctrine of Missouri. (Broadhead *a.* Noyes, 9 *Missouri*, 55; Dorsey *a.* Hardesty, *Ib.*,

157.) 12. And also of Connecticut. (Smith *a.* Mead, 3 *Conn.*, 253.) 13. It is the law of Ohio. (Kanaga *a.* Taylor, 7 *Ohio State*, 134.) 14. And of Illinois. (Sherman *a.* Gassett, 4 *Gilman*, 521.) 15. It is one of the elementary principles of the law. *Story on Confl. of Laws*, §§ 242, 242*a*, 280 ; 2 *Kent's Com.*, 606–9, and notes, 9 ed. ; 2 *Parsons on Contracts*, 95, 100, 2 ed. ; 2 *Fonbl. Eq. B.*, 5, ch. 1, § 6, and notes ; *Chitty on Bills*, 168, 169, 12th Am. ed. ; *Story on Promissory Notes*, § 165 ; 2 *Parsons on Bills*, 320 ; *Byles on Bills*, 314–316, marg. page ; *Story on Bills*, § 147 ; *Bayly on Bills*, 249, 5 ed.; *Edwards on Bills*, 180–182.) 16. It is a maxim of the Roman Law :—" *Contraxisse unusquisque in eo loco intelligitur, in quo ut solveret se obligavit.*" 17. It has the general assent of the principal foreign jurists. (*Boulle. Observ.*, 46, pp. 475, 476, 488 ; 1 *Hertii Oper. De Collis, Leg.*, § 4, n. 53, p. 147, ed. 1737 ; *Voet. ad Pand. Lib.*, 4, title 1, § 29 ; 1 *Emerigon C.*, 4, § 8 ; *Voet. de Stat.*, § 9, ch. 2, § 15, p. 270, ed. 1715 ; *Boulle. Quest. Contr. des Lois*, p. 339, &c. ; 3 *Burge Comm. on Col. and For. Law*, Pt. 2, ch. 20, pp. 771, 772.)

II. The note having been put into circulation upon a usurious consideration—having been negotiated at the rate of twelve per cent. interest—it is wholly void, and the action cannot be maintained. (3 *Rev. Stat.*, § 72, 5 ed.)

III. A contract void by the law of the place where made,— even though it is to be performed in another State, by the laws of which it would be valid, is by the just principles of International Law, void everywhere ; and the courts of no State will enforce the void contracts of another State. (Hyde *a.* Goodenow, 3 *N. Y.*, 266 ; Andrews *a.* Herriott, 4 *Cow.*, 510, note *a ;* Andrews *a.* Pond, 13 *Peters' U. S.*, 65 ; *Story on Confl. of Laws*, § 243, and cases cited.) The note in this case was void by the laws of Connecticut, as proved on the trial. (*Laws of Conn. in Case*, fol. 39–41, §§ 1, 2.) The laws of other States are regarded as *facts*, to be alleged and proved as other facts, in a cause. (Monroe *a.* Douglass, 1 *Seld.*, 447 ; Cutler *a.* Wright, 22 *N. Y.*, 472 and 489.)

IV. Interest is to be paid according to the law of the place where the contract is made, unless the payment is to be made elsewhere, and then it is to be according to the law of the place

where the contract is to be performed. (2 *Kent's Com.*, 608, and notes, 9 ed.; Thompson *a.* Powles, 2 *Simons*, 194; *Story on Confl. of Laws*, §§ 305, 291, 292, and cases cited; Boyce *a.* Edwards, 4 *Peters*, 111; Cash *a.* Kennion, 11 *Ves.*, 304; Scofield *a.* Day, 20 *Johns.*, 102; De Wolf *a.* Johnson, 10 *Wheat.*, 367, 383; *Story on Bills*, § 148, and cases cited.)

V. The opinion of the Supreme Court in this case is against the weight of authority, both in this country and in England, and is unsupported by any elementary treatise. It does not correctly discriminate between the different rules of law applicable to contracts payable generally, and to contracts which, by their terms, are to be performed in a foreign country. If this contract was not to be performed in New York, then the argument would be correct. The case of Pratt *a.* Adams (7 *Paige*, 615), is answered by the fact that Chancellor Walworth decided the same question the other way, before and subsequent to that decision. (See 6 *Paige*, 667; and 8 *Ib.*, 26.) And Pratt *a.* Adams is the authority upon which City Savings Bank *a.* Bidewell (29 *Barb.*, 325), was decided. In Andrews *a.* Pond (13 *Peters*, 65), the bill was drawn in New York, payable in Mobile, and was usurious according to the law of New York. The Action was in Alabama. While Ch. J. Taney distinctly asserts the doctrine that the law of the place of performance must govern, he yet decides the case on the exception to that rule, which is this, a contract void by the law where made, will be treated as void everywhere. This is the doctrine maintained in our third point. The learned judge in referring to the case of Pratt *a.* Adams, *supra*, does not seem to bear in mind a rule of law so well settled that it is unnecessary to cite authorities, that where a contract is made in one State to be performed in another, the parties may stipulate the highest rate of interest allowed in either.

*James S. Gibbs*, for the respondent.—I. The promissory note in this case, though dated at Lockport in this State, and made payable at a bank there, was first negotiated at Hartford, in the State of Connecticut. As a contract it had its inception in Connecticut. We therefore say the *Lex Loci Contractus* governs. (*Story on Confl. of Laws*, § 237.)

II. The reason of the *Lex Loci Contractus* is that every per-

son contracting in a country, is understood to submit himself to the laws of the place, and silently to assent to its action upon his contract. (*Story's Conflict of Laws*, § 261.) So too of its nature and obligation. (*Ib.*, 263.)

III. The question whether a contract is usurious or not, depends not upon the rate of interest allowed, but upon the validity of that interest in the country where made. (7 *Paige*, 616.) This case of 7 *Paige*, 616, is precisely in point in this case.

IV. A note was made in New Orleans, payable in New York, with 10 per cent. interest, held not void for usury. (20 *Martin*, 1, cited; *Story's Confl. of Laws*, § 298, cited and approved in 6 *Paige*, 627, 634.)

V. The courts of a country are presumed to be the best expositors of its own laws, and of the operation of them upon contracts made there. (Ch. J. Marshall in 10 *Wheat.*, 159; 17 *Martin*, 587.)

VI. The Revised Statutes of Connecticut, 1849, pp. 618 and 619, define and restrain the taking of usury. And the Supreme Court of Connecticut have placed a construction upon this statute. (27 *Conn.*, 363.)

VII. Where a loan is made in Connecticut at a greater rate of interest than is allowed by the laws of this State, but no greater than the legal rate in Connecticut, the fact that the note is made payable in this State, will not render the transaction usurious and the note invalid. And it rests with the defendants to show that the transaction is contrary to the laws of Connecticut. (29 *Barb. S. R.*, 325; Cutler *a.* Wright, 22 *N. Y.*, 472.)

By the Court.—Ingraham, J.—It was not denied on the trial of this cause that the note on which the suit was brought, was negotiated at an illegal rate of interest both in Connecticut and New York. The main question in the case is whether the laws of New York or Connecticut are to control as to the defence of usury. The note was negotiated in Hartford, but was payable at Lockport, in New York. Nor can it be denied that a contract is to be governed by the laws of the place where it is made, if it is not to be performed according to the contract, elsewhere. (*Story on Confl. of Laws*, § 282; 6 *Paige*, 230; 2 *Kent's Com.*, 457; Davis *a.* Garr, 2 *Seld.*, 124.) But if such

note or contract is by its terms to be performed in another State, then the laws of that State must govern. (2 *Kent's Com.*, 460.) This rule was laid down by this court in Jack *a.* Nichols 1 *Seld.*, 178).

The court in delivering the opinion says: "Concede that the contract was made in Connecticut, if it was to be performed in New York, it must *prima-facie* be regarded as having been made with reference to the laws of New York. The fact that the note was dated in New York, is alone presumptive evidence that the maker not only resided at the place of its date, but contemplated payment there. For the purpose of charging the indorser, the makers must have been sought at their residence or place of business in this State."

The same is stated in Curtis *a.* Leavitt (15 *N. Y.*, 9, 227), where it is said, "It is a general rule that the law of the place where contracts purely personal are made, must govern as to their construction and validity, unless they are to be performed in another State or country, in which case their construction and validity depend upon the law of the place of performance." In Bowen *a.* Newell (13 *N. Y.*, 290), it was held that the law of the place where the note or draft is payable, governs as to the days of grace allowed upon it. In Everett *a.* Vendryes (19 *N. Y.*, 436), it was held the law of the place where the bill was payable, controlled as to the liability of the drawer to the indorser. And in Cutler *a.* Wright (22 *Ib.*, 472), it was held that a note made in New York, but dated in Florida, and payable there, was governed by the laws of that place; and it is said the authorities do not leave this question in doubt. The same was also held in Pomeroy *a.* Ainsworth (22 *Barb.*, 127). These cases from our own courts render it unnecessary to examine any other class of decisions upon this point.

The judgment should be reversed, and a new trial ordered.

Judgment reversed, and new trial ordered.