By the Court.*—Masten, J.
The precise question now presented for our consideration, was decided by this court in 1866, in the case of Moss v. Rainey. The case of Jewell v. Wright (30 N. Y., 259; S. C., 18 Abb. Pr., 80), is in conflict with our decision, and supports the judgment of the referee.
Being fully persuaded that the, decision of this court in Moss v. Rainey was right, I procured the printed papers upon which Jewell v. Wright was presented to, and disposed of, by the court of appeals, to see if there was any error in the report of it. From these papers it appears that the complaint was on a promissory note made by the defendant, Wright, dated Lockport, May 30, 1857, for four hundred dollars, payable to the order of the defendant, Dunlap, one year after date, at Niagara County Bank, and indorsed by the defendant, Dunlap, and the defendant, Taylor. The action was against Wright, Dunlap & Taylor. Their answer contained a general denial, and allegations that the note was discounted at a greater rate of interest than seven per cent, per annum, to wit, that on such discount forty-eight dollars were taken out and retained, contrary to the statute in such case made and provided, and by reason whereof such note was usurious and void.
The answer did not refer to or set up the statute of Connecticut relating to the interest of money.
On the trial, the making and indorsing of the note, &c., were admitted, and the note was read in evidence, and the plaintiffs rested.
The defendants’ counsel, in opening the case to the jury, stated “ that the note was made at Lockport by defendant Wright, and indorsed by defendant Dunlap, for the accommodation of defendant, Taylor, with *398 out any consideration, and was payable at a bank in Lockport, in the State of New York. That the note was taken by defendant, Taylor, to Hartford, in the State of Connecticut, who there, without the knowledge or consent of defendants, Wright & Dunlap, induced the plaintiff, who resided and now resides at Hartford, Connecticut, to guarantee the payment of said note for the benefit and accommodation of said Taylor, and said Taylor delivered said note to one Albert Day, at said city of Hartford, at a discount at the rate of twelve per cent., receiving in full payment therefor the sum of three hundred and fifty-two dollars and no more, and that this was the first negotiation of said note. That, after the maturity of said note, the plaintiff, by reason of his guarantee, took up said note.” The plaintiff conceded this statement to be true, and the defendants rested.
The plaintiff then read in evidence the statutes of Connecticut concerning the interest of money, and the case of Fisher v. Bidwell (27 Conn., 363), and rested. The plaintiff claimed to recover three hundred and fifty-two dollars, and interest thereon at the rate of six per cent, per annum from the maturity of the note.
The court directed a verdict accordingly, subject to the opinion of the court at general term. At general term of the supreme court, judgment for the plaintiff was ordered on the verdict. The court of appeals reversed this judgment, for the reason stated in the report of the case in 30 N. Y.
I do not understand why the plaintiff put in evidence the laws of Connecticut, in respect to usury; possibly he thought that otherwise they would be pre-' sumed to be the same as those of this State.
The evidence put in, showed that the legal rate of interest in Connecticut was six per cent, per annum ; that if a greater rate of interest is taken or reserved, the *399 contract is not void, but no interest prior to the maturity of the paper can be recovered, and if interest has been actually taken, it is to be deducted. Hence, if the contract in that case was to be governed by the laws of Connecticut, the verdict was properly directed. (Curtis v. Leavitt, 15 N. Y., 9, 296, Resolution 10).
The single question which was presented by the case for solution, is clearly stated by the learned judge who delivered the opinion of the court of appeals, thus: “.The question in the case is, whether the laws of New York or Connecticut are to control as to the defense of usury. The note was negotiated in Hartford, but was payable at Lockport, in New York.” The decision was that, because the note was payable in New York, “its laws are to control as to the defense of usury.” This examination of the appeal papers in Jewell 8. Wright shows that the single point in that case is identical with the only one in the case before us.
I am embarrassed as to what action this court should take upon the case in hand. It is a delicate matter to question the decision of a court to whose review our judgments are subject.
The question involved is one of vast commercial importance, and- from the intercourse between this city and the Western States, is daily presented here.
The doctrine of Jewell v. Wright, if maintained, must, under the diversified rules and regulations of the different States of this Union, give rise to conflict in the administration of justice, disturb the comity, and embarrass the intercourse which should exist between them.
The decision in that case is, in my judgment, contrary to law, to sound reason, and the necessity of commerce,*
*400 I believe that the court on that occasion, in the haste consequent upon the large amount of business which was pressing upon it, confused, or failed to dis *401 tingnisli between the principles of law by which the validity of purely personal contracts is to be tested, and the rules which have been adopted for the inter *402 pretation of them, I remark that Jewell v. Wright was decided in March, 1864, but not reported in the regular reports until 1866.
*403 In November, 1865, The Bank of the State of Georgia v. Lewin (45 Barb., 340), was decided by the supreme court at general term. It was an action on a bill of exchange drawn at Savannah, Georgia, upon the defendant, payable at the city of New York, and accepted by him. It was discounted at Savannah, at the rate of eight per cent, per annum. By the law of Georgia, the rate of interest is seven per cent, per annum, and if a greater rate of interest is reserved, the borrower is liable only for the principal sum lent, without interest.
The defense was usury under the law of New York. The court overruled the defense, holding that the fact of the bill being payable in New York, did not affect its validity. The opinion of the court was delivered by the learned judge who delivered the opinion in the court of appeals in Jewell v. Wright. He cited the case of Balme v. Wombough (38 Barb., 352), with, approbation ; but made no reference to Jewell v. Wright. Balme v. Wombough was decided in November, 1862, by the supreme court at general term. The same judge participated in its decision. In that case, a loan of five thousand dollars was made at St. Paul, Minnesota, where parties may lawfully agree upon any rate of interest, and a note was taken therefor on time, payable at a bank in Addison, N. Y., with interest (by its terms) at the rate of twenty-six and a half per cent, per annum. The question was, whether the laws of New *404 York or Minnesota were to control, as to usury. The court answered that the laws of Minnesota were to control, and that the note was valid. In his opinion in Jewell v. Wright, the learned judge made no reference to Balme v. Wombough. We were on the argument referred to the cases cited in the elaborate briefs of the counsel in Jewell v. Wright, as reported in 27 How. Pr.
I have examined them, and also the additional cases cited by the counsel. I do not purpose to incorporate in this opinion an analysis or statement of them. I shall simply lay down the law applicable in this case, as, upon principle and authority, I understand it to be.
Parties to a personal contract may stipulate by what laws or rules their contract- shall be interpreted, i. e., those by which their intent and meaning is to be ascertained, and then those laws and rules become a part of the contract itself. But the validity of their contract must be tested by the law, which they can neither alter nor evade. And the courts, not the parties, must determine by what law the test is to be made.
1. As to the validity of a purely personal contract. Everywhere, in civilized nations, by just comity and public convenience, it is, as a general rule, essential to the validity of a personal contract, that it be entered into in the manner and form required by the law of the place where it was made. If valid in the country where it was made and is to be performed, it is valid everywhere.
If made in contravention of the law or of the clear and settled policy of the government where it was made and is to be performed, it' will not, upon the plainest reason, be enforced by the courts of such country, and, by comity, is invalid everywhere.
If it be made in a State or country where it would be lawful to do all the acts which, by the contract, it is agreed shall be done, but provides that one or more of such acts shall be done in another State or country in violation of its known laws, the courts (at least of the *405 latter State or country) will not enforce the contract. Nor should the courts of any civilized country enforce it. If entered into according to the law of the place where it was made, and, by its terms, some act is to be done in that State or country, and other acts are to be done in other States or countries, the test whether it is valid everywhere is, does it require an act to be done in a State or country in violation of its laws %
2. Interpretation. Contracts are to be construed according to the intention of the parties to them.
When a personal contract is made in one country, and is to be performed in another, the question arises, where there is a difference between the laws of the two countries, how did the parties intend that part of the contract which, by its terms, is to be performed in a different country from that in which it was made, should be performed,—whether according to the law of the place where made, or the law of th,e place of performance ?
If a different intention be not apparent, the rules of interpretation pronounce the intention to be, that it should be performed according to the law of the place of performance, and thus the law of that place is silently incorporated into the contract. Thus, if a promissory note be made in a State where there are days of grace, and, by its terms, it is payable in a State where there are none, or vice versa, payment, by force of the above stated rule of interpretation, must be made according to the law of the place of payment. And yet the parties could agreee upon a different rule of interpretation.
So too (for I consider it to be settled law), if a promissory note, payable with interest without specifying * the rate, be made and delivered in one State, and by its terms is payable in another State, there being a different rate of interest in the two States, the note, by • force of the above rule of interpretation, is to be paid *406 with interest according to the rate of the State where payable, whether the rate be greater or smaller than that of the State where the note was made.
Such rule of construction as to the rate of interest would not have been applied, if in either case it would render the contract illegal, for that construction will be given to a contract which will .render it valid, if it can reasonably be done.
The municipal laws of a State or country do not extend beyond its territorial boundaries.
The policy of the usury law is strictly internal.
I am unable to understand how, in a case like the one in hand, there could ever have been any doubt or conflict. The consideration on the part of the plaintiffs, for the promise of the defendants, is executed—lawfully executed, at the place where it was done, and the promise of the defendants is to do an act here innocent in itself, to wit, to pay a certain sum of money.
The traffic in lottery tickets is lawful in several of the States of this Union, but is prohibited here—is a misdemeanor here.
If, upon a sale and delivery of lottery tickets in a State where it is lawful, by one of its citizens to another, the purchaser should, for the price, draw his bill of exchange on his banker or correspondent here, or give his promissory note payable in this State, would the bill or note bé illegal or invalid % Or, if, in a State where the traffic is lawful, a contract should be entered into by v hich one of the parties to it should agree to sell and deliver to the other party certain lottery tickets, on a certain day, and at a certain place in such State, and, in consideration thereof, the other party should agree to pay to him a certain sum of money, on a certain day, at a certain place in this State, would the contract be illegal and void % And would it make any difference, if the contract by its very terms provided that “this contract is to be governed by the laws of the *407 State of New York” ? I know of no principle, upon which it can logically be maintained, that such bill, note, or contract would be invalid. No law or policy would be violated. The transaction would be lawful where it was made. The act (payment of money) to be done in . this State, is lawful here, and neither the law nor policy of this State in respect to such traffic extends beyond its territory (Commonwealth of Kentucky v. Bassford, 6 Hill, 526; Hyde v. Groodnow, 3 N. Y. [3 Comst.], 266; Merchant’s Bank v. Spalding, 12 Barb., 302, and 9 N. Y. [5 Seld.], 53).
• Nor can the parties to- a contract, which provides that an act shall be done in a State or country where it is unlawful to do such act, give legality to the contract, by providing that the lawfulness of the act shall not be determined by the law of the State or country where it was or is to be done, but by the law of some other selected State or country.
It is equally plain to my mind, that the parties to a contract, by which a certain act is to be done at a place where it is lawful to do the act, cannot by force of such act make the contract illegal, by stipulating that the contract is to be governed by the law of another country where it is unlawful to do such act.
That would be to put the citizen or subject above the government and its courts, and to subvert the theory and policy of government.
The weight of authority seems to be that in a note made in one State and payable in another, interest at the rate allowed by the laws of either State may be lawfully reserved.
We are of the opinion that the usury law of this State has no application to the case before us, and that the note in suit is valid (Depau v. Humphreys, 8 Mart. N. S., 1; Peck v. Mayo, 14 Vt., 33; Chapman v. Robertson, 6 Paige, 627; Pope v. Nickerson, 3 Story, 466).
Judgment must be reversed, and a new trial ordered.

 Present, Verplanii, Hasten and Clinton, JJ,

In the ease oí Jewell v. Wright, Judge Davies dissented from the decision reported. And as the views of that learned judge sustain the *400 principles on which the decision in our text is placed, we present his opinion in that case, which has not before been published.
Davies, J.—This action is upon a note, made and dated at Lock-port, in this State, May 80, 1857, for four hundred dollars, payable one year after date, to the order of William J. Dunlap, at the Miagara County Bank, also in this State. The note was made by Wright, and indorsed by Dunlap, for the accommodation of the other defendant, Virgil Taylor, and to enable him to raise money upon it. Taylor indorsed the note, took it to Hartford, in the State of Connecticut, and there induced the plaintiff, who resided there, to guarantee the payment of the note for the benefit and accommodation of Taylor; and Taylor, at Hartford, then sold and delivered the note to one Albert Day, also residing there, at a discount of twelve per cent., receiving therefor only the sum of three hundred and fifty-two dollars. This was the first negotiation of the note. The plaintiff, after the note became due, paid it. All that occurred in Hartford was without the knowledge or consent of the defendants, Wright and Dunlap. The court directed a verdict for plaintiff for four hundred and one dollars and sixty-six cents, this being for the sum of three hundred and fifty-two dollars originally paid by Day for the note, and the interest at six per cent on such sum from the time the note became due, and protest fees seventy-five cents.—to which direction exception was taken,—and also directed the exceptions to be heard in the first instance at the general term. The general term overruled the exceptions and gave judgment thereon for the plaintiff and the defendants appeal to this court.
It is conceded on the part of the defendant, that the contract upon which this action is sought to be maintained, is a Connecticut contract. The note sued on had no vitality until it was negotiated in that State. It had its inception there. The lex loci contractus must therefore govern (Story on Confl. of L., §§ 241, 242). This author says, “ Generally speaking, the validity of a contract is to be decided by the law of the place where it is made. If valid there, it is, by the general law of nations, jure gentium, held valid everywhere, by the tacit or impli ed consent of the parties. The rule is founded not merely in the convenience, but in the necessities of nations; for otherwise it would be impracticable for them to carry on an extensive intercourse and commerce with each other. The whole system of purchases and sales, *401 of mutual credits, and of transfers of negotiable instruments, rests on this foundation.” By the laws of Connecticut, this contract, although usurious, was not utterly void; but void only as to the whole sum and amount reserved or taken for forbearance (Rev. Stat. of Conn., 1849, pp. 618, 619; Compilation of 1854, p. 867; Fisher v. Bidwell, 27 Conn., 368. By these statutes, as construed by the courts of that State, the holder of this note could have recovered thereon the amount actually advanced thereon, with interest by way of damages. This is what the plaintiff has been allowed to take a verdict for in this State.
But it is strenuously urged on the part of the defendants, that the note in this action, being made payable in this State, is to be deemed a contract made in this State, and to be governed by its laws. That when the contract by its terms is to be performed in a State, other'than that in which it was made, effect will only be given to the laws of the place of performance.
Conceding the soundness of this proposition as a general rule, "it will be found that the present case presents an exception, well recognized, and abundantly sustained by authority. What does the- performance of the contract require to be done in this State ? It is to repay here, the money, which, by the laws of the State of Connecticut, the plaintiff might legally demand and collect there. No law of this State is violated by the use of the power of the court here, to enforce a contract lawful in the place where it was made. There is nothing on the face of the contract showing an intent to do any act within this State prohibited by its laws.
The law on the point now under consideration has long been regarded as settled in this State, and we see no reason for now disturbing it. As early as 1837, Chancellor Walworth, in Chapman v. Robertson (6 Paige, 634) held that if a contract for the loan of money is made-here, and upon a mortgage of lands in this State which would be valid if the money was payable to the creditor here, it cannot be a violation of the English usury laws, although the money is made payable to the creditors in that country, and at a rate of interest which is greater than is allowed by the laws of England. The chancellor refers to the opinion of Martin, J., in Depau v. Humphreys (2 Mart. N. S., 1), in which decision he says he fully concurs. In that case the supreme court of Louisiana held that in a note given at New Orleans, upon a loan of money made there, the creditor might stipulate for the highest *402 conventional interest allowed by the laws of Louisiana, although the rate of interest thus agreed to be paid was higher than that which could be taken upon a loan by the laws of the State where such note was made payable. The precise point presented in this case arose in that of Pratt v. Adams (7 Paige, 636). There certain promissory notes were made and indorsed in this State, and were made payable at banks in this State, and taken into the State of Pennsylvania and first negotiated there; and there discounted, usuriously, by the laws of this State. By the laws of that State, if the usurious premium was actually received, the usurer was liable to forfeit the whole amount of the value, to be recovered in a gui tarn action for the use of the State and the common informer, but he had the legal right to recover the loan and legal interest from the borrower. The chancellor held that the contract must be governed by the laws of Pennsylvania, although the notes were payable at a bank in New York, and that thfe amount actually lent upon the note, with the legal interest thereon, formed a good consideration for a direction to the trustees to pay that money out of the assigned property to the bank in Pennsylvania which held and discounted the notes. The like doctrine has been affirmed in the supreme court of this State, in City Savings Bank v. Bidwell (29 Barb., 325). That action was upon a promissory note made by the defendant, Bidwell, on July 20,1855, payable to the order of the defendant, Parker, eight months after date, at the Bank of New York, and indorsed by Parker. The note was signed by Bidwell, at the city of New York, and there indorsed by Parker, as an accommodation indorser, for the use and benefit of Bidwell. The note so signed and indorsed, was delivered at the city of New York, to one Post, to get discounted for the use and benefit of Bidwell, at the city of New Haven, where Post then resided. Post presented the note to the plaintiffs for discount, at their office in New Haven, who discounted the same at the rate of twelve per cent, per annum. The referee found, as matter of law, that the transaction was not affected by the laws of this State against usury, and gave judgment for plaintiffs. The same was affirmed at general term. The court in its opinion says, it is claimed that the note being made payable in New York, the question must be determined by the laws of New York. If the thing to be done, on the face of the contract, was contrary to the laws of New York, the rule tha1 the law of the place of performance must control, might, perhaps, ap *403 ply. But in this case, the loan was clearly made in Connecticut, and the excessive interest was taken there. If, therefore, no more'interest was taken than the laws of that State allowed, it surely cannot be illegal to repay it, in the State of New York. So in the case at bar. The plaintiff was entitled, by the laws of the State, when the money was advanced, to recover such advance, and the damages for its retention. It is not unlawful, by the laws of this State, for the parties to agree to pay here, what it was lawful to recover there. The judgment appealed from should therefore be affirmed, with costs.
(The judgment was, however, reversed, as above stated.)