## A. E. HILDRETH vs. WILLIAM A. SHEPARD.

A party may be examined as a witness in his own behalf to contradict a witness previously called and examined by him, where such party's testimony is not necessarily an impeachment of the witness.

Thus, where a witness has testified that there was a consideration for certain drafts in suit, the party calling him may be allowed to prove, by his own testimony, that the drafts were accomodation paper. The testimony is admissible to show that the witness was mistaken as to the consideration.

In New York, the law is settled, by repeated adjudications, that the law of the State where a contract is dated and is to be performed is to govern, as to its construction and validity.

Bills of exchange were drawn by G. to his own order, at Boston, on the defendant, payable to the order of G. and endorsed by G. & M. The drafts were accepted by the defendant payable at 109 West street, New York city, and were negotiated in Boston, and sold to the plaintiff at a discount of about sixty or seventy dollars on each draft. *Held* that the law of New York applied to the case, and the drafts were void for usury if they were sold at a higher rate of interest than seven per cent.

Letters, written by a person who is not a party to the suit, are not admissible in evidence; being nothing but the mere declarations of the writer, not even sworn to. Their contents should be proved by the writer as a witness, if he has knowledge of their contents.

Such letters cannot be read for the purpose of impeaching the writer, by a party who has previously examined him as a witness.

THIS action was brought to recover the amount of two bills of exchange, drawn by J. Gould, and dated at Boston, Massachusetts, upon the defendant Shepard, at 107 West street, New York, and accepted by him in the words "accepted, payable at 107 West street, N. Y." The drawer was a resident of Lexington, Mass., doing business at Boston; the defendant was a resident of this State, and his place of business was in New York city. The agreements to accept, and the terms of the acceptances were all made in New York, the acceptance dated September 23, 1869, was made in New York, pursuant to such agreement, and sent in a letter to the drawer at Boston. The other acceptance was made and delivered to the drawer in New York; both were discounted for the drawer by the plaintiff, before maturity, in Boston, at or near which place he

resided.    Such discounts were the first negotiations of the bills, and in each case the discount was at a rate usurious by the laws of New York.

The defendant, by his answer, admitted that he accepted the drafts set out in the complaint, but alleged that such acceptances were without consideration, and were made by the defendant Shepard, and delivered to James Gould, the drawer thereof, as the agent of Shepard & Moulton, to have the same discounted for the benefit of Shepard and Gould.    That it was agreed between the defendant and Gould that said Gould should procure the said acceptances at the rate of seven per cent per annum, and at no greater rate.    That Gould delivered said acceptances to the plaintiff upon a loan to him, said Gould, by the plaintiff of a certain sum of money.    That upon such loan, and at and before the delivery of the said acceptances, the said James Gould and the plaintiff had agreed that the plaintiff should reserve, and said Gould should pay, a greater sum than at the rate of seven per cent per annum, to wit, on each of the said acceptances, the sum of $50.    That said sum of $100 was deducted and reserved from the amount of said acceptances by the plaintiff, and the balance only was paid to said Gould by the plaintiff, and that said Gould agreed to pay, and did pay to the plaintiff the sum of $100 for the loan by the plaintiff of money on said acceptances until the maturity thereof.    That said acceptances did not, at the time the same were discounted by the plaintiff, have any valid existence as contracts or promises to pay on part of the defendant.

On the trial, when the plaintiff rested, the plaintiff's counsel offered in evidence the laws of Massachusetts, and read from the acts and resolves of the State of Massachusetts, laws of 1867, chapter 56, page 500.    The defendants' counsel objected, on the ground that the evidence offered was immaterial and irrelevant.    (Objection overruled and

exception taken.) Admitted and read in evidence as follows:

" An act concerning the rate of interest. 1867. Chapter 56. Be it enacted &c. as follows:

SECTION 1. When there is no agreement for a different rate of interest of money, the same shall continue to be at the rate of six dollars upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time.

· SECTION 2. It shall be lawful to contract to pay or reserve the discount at any rate, and to contract for payment and receipt of any rate of interest, PROVIDED HOWEVER, that no greater rate of interest than six per centum per annum shall be recovered in any action, except where the agreement to pay such greater rate of interest is in writing."

The only conflict of evidence, on the trial, was whether the acceptances were given for value, or for the accommodation of the drawer; which fact was submitted to the jury.

The plaintiff's counsel then asked the court to direct a verdict for the plaintiff, on the ground that the validity of the acceptances was to be determined by the law of Massachusetts.

The court charged the jury that the sole question involved was, whether these were accommodation acceptances, or were made for value. That if they should find that that was the transaction between the parties, and that was the consideration for the drawing of these drafts or acceptances, then the subsequent negotiation of the drafts by Mr. Gould at an usurious rate would not affect the validity of the contract so far as the acceptor and endorser, Messrs. Shepard and Moulton, were concerned; because the drafts had their legal existence, in that case, as soon as they came into the possession of Gould, and they were his property, and he had a right to do with them as he pleased. That in

case they should find Messrs, Moulton and Shepard had given a correct statement of the transaction in regard to the drafts, then the drafts had no validity whatever in the hands of Gould. That if they were made by Moulton and Shepard as accommodation for Gould, their first legal existence was when they were discounted or sold by Mr. Gould; and if they were sold at a higher rate of interest than seven per cent, then the defendants would have a right to avail themselves of the defence of usury, and if such was the case, they were not liable on the drafts in question. Therefore, the simple question for them to determine was, whether the drafts were accommodation paper, or whether they were made for value, as testified to by Mr. Gould. That if they should find they were accommodation paper, under the evidence in the case, the defence of usury was made out; but if they should find that they were not, the plaintiff would be entitled to recover the total amount and interest.

The jury rendered a verdict for the defendants.

The plaintiff's counsel moved for a new trial on the minutes, which was denied. The plaintiff excepted, and appealed from the judgment entered upon the verdict.

*Chas. H. Smith*, for the appellant.

*Wm. Sutphen*, for the respondents.

*By the Court*, INGRAHAM, P. J. This action is brought to recover the amount of two bills of exchange, dated at Boston, drawn by James Gould to his own order, and endorsed by him and Moulton, on William A. Shepard. The drafts were accepted by Shepard payable at 109 West street, New York. The drafts were negotiated in Boston and sold to the plaintiff at a discount of about $60 or $70 on each draft.

There was a difference in the testimony on the part of the plaintiff and of the defendant, as to the consideration of the drafts; but that question was submitted to the

Hildreth *v.* Shepard.

jury, and they have found the drafts to be accommoda tion paper.

An objection was made to the admission of Shepard as a witness on the part of the defendant, to prove that the drafts were accommodation paper. He had previously read the testimony of Gould, called by himself, which showed there was a consideration for the same ; and an objection was made to the examination of the defendant to show that there was no consideration. Upon this point it is sufficient to say, that such an examination was not necessarily an impeachment of Gould. He had testified to the sale of some phosphate to Shepard and Moulton, and that these acceptances were given in consideration of the sale and delivery of the phosphate. It is to be observed that the sale was not to Shepard alone, while the drafts were drawn on Shepard individually ; and the evidence shows that Shepard and Moulton gave acceptances in reference to the business they had with Gould. It was admissible to show that Gould was mistaken, as to the consideration. These remarks apply as well to the testimony of Moulton as to that of Shepard.

I am at a loss to see the propriety of admitting the letters of Gould, (exhibits 1, 2, 3 and 4,) in evidence. They were addressed to Moulton. Gould was not a party to the action, and they were nothing but the mere declarations of Gould, not even sworn to. The contents of them were very material on the question of consideration, and should have been proved by Gould, as a witness, if he had knowledge of the contents. For the purpose of impeachment they could not be read, because Gould was the defendant's witness, and could not be impeached by him.

The material question in the case appears to be whether the laws of New York or Massachusetts are to govern in the application of the law against usury. The judge held, and so charged the jury, that the drafts

were void if they were sold at a higher rate of interest than seven per cent—thus applying the law of New York to the drafts in suit.

There can be no doubt but that the law of this State is settled, by repeated decisions, that the law of the State where the contract is dated and is to be performed is to govern as to its construction and validity. This was held in *Jacks* v. *Nichols*, (5 *N. Y.* 178.) The judge says: "Concede that the contract was made in Connecticut, if it was to be performed in New York, it must be regarded as having been made with reference to the laws of New York." In *Davis* v. *Garr*, (6 *N. Y.* 124,) the contract was made in Florida, and there was no proof that it was to be performed elsewhere; and it was held to be governed by the laws of Florida.

So, in *Bowen* v. *Newell*, (13 *N. Y.* 290,) the check was drawn on a bank in Connecticut, and payable there; and it was held that the laws of Connecticut controlled it.

So, in *Curtis* v. *Leavitt*, (15 *N. Y.* 21,) it was held that a contract for the loan of money, to be repaid in Pennsylvania, was to be governed by the laws of that State. And at page 230, it was said the usury law of that State must apply. See also *Everett* v. *Vendryes*, (19 *N. Y.* 436;) *Cutler* v. *Wright*, (22 *id.* 472.)

In *Jewell* v. *Wright*, (30 *N. Y.* 259,) the note was made at Lockport, N. Y., and was payable at a bank in that place, was negotiated in Connecticut, and discounted at a usurious rate of interest. The laws of New York were held to be applicable to it.

In *Dyke* v. *The Erie Railway Co.*, (45 *N. Y.* 113,) Allen, J., says: "The rule for the interpretation of contracts is that they are to be construed according to the laws of the State in which they are made, unless from their terms it is perceived that they were entered into with a view to the laws of some other State."

The plaintiff relies upon two or three cases as conflicting with these rules.

*Balme* v. *Wombough*, (38 *Barb.* 352.) In that case, a loan had been made at a rate of interest allowed by the laws of Minnesota, and notes were given payable in New York, but secured by a mortgage on land in Minnesota, and it was held that these facts were sufficient to take the case out of the rule above stated. The justice, in his opinion, states the rule to be as is given in the cases above cited.

The case of *The Bank of Georgia* v. *Lewin*, (45 *Barb.* 340,) was upon a note given in payment of a previous indebtedness, and was decided upon the peculiar facts in that case. The whole transaction took place in Georgia, and was intended as a transfer of moneys which the drawer had in New York for the purpose of making such payment. It was decided on the same principle that was stated in *Balme* v. *Wombough*, (38 *Barb.* 352,) and in *Chapman* v. *Robertson*, (6 *Paige*, 634,) that parties might agree upon a rate of interest in the State where the contract was made, if in accordance with the law of that State. See also *Pratt* v. *Adams*, (7 *Paige*, 632.)

The true rule to be drawn from these cases seems to be that where the note is dated and made payable in one State, and taken out of that State into another for negotiation or sale, it is still to be considered as a contract made subject to the laws of the State where dated and made payable. But where the note is made in one State, negotiated and sold in that State at a rate of interest allowed by the laws of the State where sold, then the same is to be governed by the laws of that State, and not of the State where it is payable

It certainly would have been more simple, and equally consistent with equity and justice, to have adopted the plainer rule of *lex loci contractus* as governing in all

cases of this character; but the remedy is with the Court of Appeals, and not the other courts.

For the reason before stated, however, we think a new trial must be granted; costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 6, 1873. *Ingraham* and *Davis*, Justices.]