PLINY JEWELL v. OLIVER C. WRIGHT and others.

Where a promissory note, made and dated in this state, and payable at a bank here, is negotiated in another state, the laws of New York are to control as to the defense of usury.

And if the note is discounted at a rate of interest exceeding seven per cent., no action can be maintained upon it here.

THIS action was brought to recover the amount of a promissory note made by the defendant Wright to the order of the defendant Dunlap, who endorsed it for the benefit and accommodation of the defendant Taylor; and it was without consideration. It was made and endorsed by Dunlap, and delivered to Taylor at Lockport, N. Y., May 30, 1857, for $400, payable at Niagara County Bank, at Lockport, one year from date. Taylor took it to Connecticut, and there induced the plaintiff to guaranty it for his benefit, and then endorsed it himself, and procured it to be discounted by Albert Day, at the rate of twelve per cent.; Day reserving out of the face of the note $48, and giving to Taylor, as the net proceeds of the note, $352. The note did not bear interest, and this was its first negotiation. The note, after being protested, was taken up by the plaintiff, who brought this action in the supreme court.

At the trial, this state of facts was conceded. The plaintiff then read in evidence pages 618 and 619 of Revised Statutes of Connecticut, of 1849, by consent. After proving the amount due on the note, the evidence was closed. The court thereupon directed a verdict for the plaintiff, subject to the opinion of the court at general term, upon a case to be made. The general term gave judgment for the plaintiff on the verdict. From the judgment entered pursuant to such direction, this appeal is taken.

*Geo. W. Cothran*, for the appellant.

I. In determining the validity of a contract purely personal, will the court give effect to the law of the place where the contract was made, or the law of the place where it is, by its terms, to be performed, is the precise question to be passed upon in this case.

1. In contemplation of law, this contract was made in Connecticut, for it was there that the note was first delivered as the evidence of an existing indebtedness. (*Cutler* v. *Wright*, 22 N. Y. Rep. 472–4.)

2. In general, the validity of personal contracts is determined by the law of the place of making. In fact, it is the universal rule unless the parties stipulate otherwise. (Story on Confl. of Laws, §§ 317, 320, 332, 340; *Curtis et al.* v. *Leavitt*, 15 N. Y. Rep. 227.)

3. But where the contract, by its terms, is to be performed in a state other than that in which it was made, effect will only be given to the laws of the place of performance.

(*a.*) Such has frequently been declared to be the law of this State, by our courts. (*Cutler* v. *Wright*, 22 N. Y. R. 472, 474, 480–9; *Everett* v. *Vendryes*, 19 N. Y. 436; *Bowen* v. *Newell*, 13 N. Y. 290; *Curtis* v. *Leavitt*, 15 N. Y. 14, 85–9, 91, 227, 296, [10]; *Hyde* v. *Goodnow*, 3 N. Y. 266; *Burckle* v. *Eckhart*, 3 N. Y. 132; *Lee* v. *Selleck*, 32 Barb. S. C. R. 522; *Pomeroy* v. *Ainsworth*, 22 Barb. 120, and 127–9; *President &c. of Bank of Commerce* v. *Rutland R. R. Co.*, 10 How. Pr. Rep. 1; *Thompson* v. *Ketcham*, 4 J. R. 285; *Warren* v. *Lynch*, 5 J. R. 239; *Thompson* v. *Ketcham*, 8 J. R. 189; *Fanning* v. *Consequa*, 17 J. R. 511; *Scofield* v. *Day*, 20 J. R. 102; *Sherrill* v. *Hopkins*, 1 Cow. 103; *Martin* v. *Hill*, 12 Barb. 631; *Balme* v. *Wombough*, 38 Barb. 352; *Chapman* v. *Robertson*, 6 Paige Ch. 627; *Le Breton* v. *Miles*, 8 Paige Ch. 261.)

(*b.*) It is the doctrine established in the supreme court and circuit courts of the United States. (*Andrews* v.

*Pond,* 13 Peters' R. 65; *Cox.* v. *United States,* 6 Peters' R. 172; *Van Reimsdyke* v. *Kane,* 1 Gall. R. 371; *Emery* v. *Greenough,* 3 Dall. 370; *Lanusse* v. *Barker,* 3 Wheat. 101, 146; *Slocum* v. *Pomroy,* 6 Cranch, 221; *Harrison* v. *Sterry,* 5 Cranch, 289; *Pope* v. *Nickerson,* 3 Story C. C. Rep. 465; *Strother* v. *Lucas,* 12 Peters' Rep. 410, 436, per BALDWIN, J.; *Bell* v. *Bruen,* 1 How. United States Rep. 169, 182.)

(c.) It has long been the law of England. (*Cooper* v. *Earl of Waldegrave,* 2 Beavan, 282; *Robinson* v. *Bland,* 2 Burrow, 1077; *Melan* v. *Duke of Fitz James,* 1 Bos. & Pull. 138; *Robinson* v. *Bland,* 1 Black. Rep. 247, 258; *Rothschild* v. *Currie,* 1 Q. B. Rep. 43; *Thompson* v. *Powles,* 2 Simons' Rep. 194; *Down* v. *Lippman,* 5 Clark & Fin. R. 1, 13, 19, 20; *Ferguson* v. *Fyffe,* 8 Clark & Fin. R. 121; *Pattison* v. *Mills,* 1 Dow & Clark, 342, 362); and is the law in several of the states.

(d.) It is one of the elementary principles of the law. (Story on Confl. of Laws, §§ 242, 242a, 280; 2 Kent's Com. 606–9, and notes, 9th ed.; 2 Parsons on Contracts, 95, 100, 2d ed.; 2 Fonbl. Eq. R. 5, chap. 1, § 6, and note; Chitty on Bills, 168, 169, 12th Am. ed.; Story on Promissory Notes, § 165; 2 Parsons on Bills, 320; Byles on Bills, 314 to 316, marg. page; Story on Bills, § 147; Bayly on Bills, 249, 5th ed.; Marius on Bills, 75, 89–92, 101–103; Edwards on Bills, 180–182.)

(e.) It is a maxim of the Roman law. "*Contraxisse unusquisque in eo loco intelligitur, in quo ut solveret se obligavit.*"

(f.) It has the general assent of the principal foreign jurists. (Boullenois Observ. 46, page 475, 476, 488; 1 Hertii Oper. De Collis. Leg. § 4, n. 53, page 147, ed. 1737; Voet. ad Pand. Lib. 4, title 1, § 29; 1 Emerigon C. 4, § 8; Voet. de Stat. § 9, chap. 2, § 15, p. 270, ed. 1715; Boullenoies Quest. Contr. des Lois; page 339, &c.; 3 Burge Comm. on Col. and For. Law, Pt. 2, chap. 20, page 771, 772.)

II. The note having been put into circulation upon a usurious consideration, having been negotiated at the rate of twelve per cent. interest, it is wholly void, and the action cannot be maintained. (3 R. S. 72, § –, 5th ed.)

III. A contract void by the law of the place where made, even though it is to be performed in another state, by the laws of which it would be valid, is by the just principles of international law, void every where, as the courts of no state will enforce the void contracts of another state. (*Hyde* v. *Goodnow*, 3 N. Y. Rep. 266; *Andrews* v. *Herriot*, 4 Cow. 510, note *a*; *Andrews* v. *Pond*, 13 Peters' U. S. Rep. 65; Story on Confl. of Laws, § 243, and cases cited.)

1. The note in this case was void by the laws of Connecticut, as proved on the trial. (Laws of Conn. in Case, fol. 39 to 41, §§ 1, 2.)

IV. Interest is to be paid according to the law of the place where the contract is made, unless the payment is to be made elsewhere, and then it is to be according to the law of the place where the contract is to be performed. (2 Kent's Comm. 608, and notes, 9th ed.; *Thompson* v. *Powles*, 2 Simons' Rep. 194; Story on Confl. of Laws, § 305, 291, 292, and cases cited; *Boyce* v. *Edwards*, 4 Peters, 111; *Cash* v. *Kennion*, 11 Vesey, 314; *Scofield* v. *Day*, 20 Johns. 102; *De Wolf* v. *Johnson*, 10 Wheat. 367, 383; Story on Bills, § 148, and cases cited.)

*James S. Gibbs*, for the respondent.

I. The promissory note in this case, though dated at Lockport, in this state, and made payable at a bank there, was negotiated at Hartford, in the state of Connecticut. As a contract it had its inception in Connecticut. We therefore say the *lex loci contractus governs*. (Story on Conflict of Laws, § 237.)

II. The reason of the *lex loci contractus* is that every person contracting in a country, is understood to submit

himself to the laws of the place, and silently to assent to its action upon his contract. (Story on Conflict of Laws, § 261.) So too of its nature and obligation. (Id. § 263.)

III. The question whether a contract is usurious or not, depends not upon the rate of interest allowed, but upon the validity of that interest in the country where made. (7 Paige, 616.) This case of 7 Paige, 616, is precisely in point in this case. A note was made in New Orleans, payable in New York, with 10 per cent interest; held not void for usury. (20 Martin R. 1, cited Story on Conflict of Laws, § 298—cited and approved in 6 Paige, 627, 634.)

IV. The courts of a country are presumed to be the best expositors of its own laws, and of the operation of them upon contracts made there. (Ch. J. MARSHALL in 10 Wheaton, 159; 17 Martin R. 587.)

V. The Revised Statutes of Connecticut, 1849, pages 618 and 619, define and restrain the taking of usury. And the supreme court of Connecticut have placed a construction upon this statute. (27 Con. Rep. page 363.) It appears from the 3d section of that statute that although the amount received for discount, in this case, was greater than the rate of interest allowed by law, the contract was not utterly void by the laws of Connecticut.

VI. Where a loan is made in Connecticut at a greater rate of interest than is allowed by the laws of this state, but no greater than the legal rate in Connecticut, the fact that the note is made payable in this state, will not render the transaction usurious and the note invalid. And it rests with the defendants to show that the transaction is contrary to the laws of Connecticut. (29 Barb. 325; *Cutler adm'r,* v. *Wright,* 22 N. Y. R. p. 472.)

INGRAHAM, J. It was not denied on the trial of this cause that the note on which the suit was brought was negotiated at a rate of interest illegal, both in Connecticut and New York.

The main question in the case is, whether the laws of

New York or Connecticut are to control as to the defense of usury. The note was negotiated in Hartford, but was payable at Lockport, in New York.

Nor can it be denied that a contract is to be governed by the laws of the place where it is made, if it is not to be performed according to the terms of the contract elsewhere. (Story on Conflict of Laws, § 282; 6 Paige, 230; 2 Kent's Com. 457; *Davis* v. *Garr*, 2 Selden, 124.)

But if such note or contract is by its terms to be performed in another state, then the laws of that state must govern. (2 Kent's Com. 460.) This rule was laid down by this court in *Jacks* v. *Nichols* (1 Seld. 178). The court in delivering the opinion, says: "Concede that the contract was made in Connecticut, if it was to be performed in New York, it must, *prima facie*, be regarded as having been made with reference to the laws of New York." The fact that the note was dated in New York, is alone presumptive evidence that the maker not only resided at the place of its date, but contemplated payment there. For the purpose of charging the endorsers, the makers must have been sought at their residence or place of business in this state. The same is stated in *Curtis* v. *Leavitt* (15 N. Y. R. p. 9–227), where it is said: "It is a general rule that the law of the place, where contracts purely personal are made, must govern as to their construction and validity, unless they are to be performed in another state or country, in which case their construction and validity depends upon the law of the place of performance." In *Bowen* v. *Newell* (13 N. Y. p. 290), it was held that the law of the place where the note or draft is payable, governs as to the days of grace allowed upon it. In *Everett* v. *Vendryes* (19 N. Y. R. p. 436), it was held the law of the place where the bill was payable, controled as to the liability of the drawer to the indorsee. And in *Cutler* v. *Wright* (22 N. Y. R. 472), it was held that a note made in New York, but dated in Florida, and payable there, was governed by the laws of that place; and it is said the authorities do not leave

this question in doubt.   The same was also held in *Pomeroy* v. *Ainsworth* (22 Barb. 127).

These cases from our own courts, render it unnecessary to examine any other class of decisions upon this point.

The judgment should be reversed, and a new trial ordered.

DAVIES, J. read an opinion in favor of affirmance.   SELDEN, J. was absent.

All the other judges being for reversal, judgment reversed.