Edward B. Dickinson, Appellant, *v.* William Y. Edwards, Respondent.

77   573<br>
150   322

Where a promissory note is made in this State, by a resident thereof, bearing date here, by its terms payable at some place in the State, with no rate of interest specified, and no intention of the maker existing that it will be taken elsewhere for discount, if it is first negotiated in another State, at a rate of interest lawful there, but greater than that allowed by the usury laws of this State, it is invalid.

*Tilden* v. *Blair* (21 Wall., 241); *Bank of Georgia* v. *Lewin* (45 Barb., 340); *Kentucky* v. *Bassford* (6 Hill, 526); *Hyde* v. *Goodnow* (3 N. Y., 266); *Merchants' Bank* v. *Spalding* (9 id., 53); *National Bank* v. *Morris* (1 Hun, 680); *P. C. S. Bank* v. *Frost* (13 Nat. Bank Reg., 356); *Scudder* v. *U. N. Bank* (1 Otto, 406), distinguished.

*Bowen* v. *Bradley* (9 Abb. Pr. [N. S.], 395); *W. C. S. Bank* v. *Low* (6 N. C., 76), overruled.

(Argued May 28, 1879; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendant, entered upon an order reversing an order granting a new trial, and directing judgment on verdict. (Reported below, 13 Hun, 405.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*Walter R. Beach*, for appellant. Defendant's liability must be considered the same as though he had made, dated and delivered the note to Mr. Pulsifer at Boston. (*Merchants' Bank* v. *Griswold*, 72 N. Y., 472; *Pomeroy* v. *Ainsworth*, 22 Barb., 127; *Tilden* v. *Blair*, 21 Wall., 241; *Cutler* v. *Wright*, 22 N. Y., 472; *Davis* v. *Garr*, 2 Seld., 124; 1 Paige, 220; 7 id., 632.) The fact that the note was payable in the State of New York cannot vary the maker's liability or avoid the contract thus legally made in Massachusetts. (*Bowen* v. *Bradley*, 9 Abb. Pr., 395; *Kentucky* v. *Bassford*, 6 Hill, 526; *McIntyre* v. *Parks*, 3 Metc., 207; Story's Confl. of Laws [Redfield's ed.], § 252; *Hosford* v. *Nichols*, 1 Paige, 220; *Chapman* v. *Robertson*, 6 id., 634; *Pratt* v. *Adams*, 7 id., 636; *Cook* v. *Litchfield*, 9 N. Y., 280; *Hyde* v. *Goodenow*, 3 Comst., 271; *Lee* v. *Selleck*, 33 N. Y., 615; *Bowen* v. *Bradley*, 9 Abb. [N. S.], 395; *City Sav. Bank* v. *Bidwell*, 29 Barb., 325; *Bank of Georgia* v. *Lewin*, 45 id., 340; *Balme* v. *Wombough*, 38 id., 352; *Depau* v. *Humpreys*, 8 Mart. [N. S.], 1; *Peck* v. *Mayo*, 14 Vt., 33; *Pope* v. *Nickerson*, 3 Story, 466; *Tilden* v. *Blair*, 21 Wall., 241; *Prov. Co. Sav. Bank* v. *Frost*, 13 National Bank Reg., 358, 359; *Andrews* v. *Pond*, 13 Pet., 78; *Miller* v. *Tiffany*, 1 Wall., 310; *De Wolf* v. *Johnson*, 10 Wheat., 383; 2 Parson's on Cont., 584 [5th ed.], note *h;* 2 Parson's on Notes and Bills, 378 [2d ed.]; *Jacks* v. *Nichols*, 1 Seld., 178; *Curtis* v. *Leavitt*, 15 N. Y., 9; *Bowen* v. *Newell*, 13 id., 290; *Everett* v. *Venderyes*, 19 id., 436; *Cutler* v. *Wright*, 22 id., 472; *Pomeroy* v. *Ainsworth*, 22 Barb., 127.)

*W. S. Packer*, for respondent. Personal contracts are governed by the law of the place where they are to be performed unless they contain an express stipulation to the contrary. (*Cutler* v. *Wright*, 22 N. Y., 472; *Curtis* v. *Leavitt*, 15 id., 91, 230, 236; *Andrews* v. *Pond*, 13 Peters, 65; Story Confl. of Laws, §§ 280, 291; *Bank of Georgia* v. *Lewin*, 45 Barb., 340; *Tilden* v. *Blair*, 21 Wall., 241; *Jewell* v. *Wright*, 30 N. Y., 259; Wharton Confl. of Laws, §§ 399, 401; *Hildreth* v. *Shepard*, 65 Barb., 269; *Dickinson* v. *Edwards*, 13 Hun, 405; *Opdyke* v. *Merwin*, 13 id., 401; *Clayes* v. *Hooker*, 4 id., 231; *Balme* v. *Wombaugh*, 38 Barb., 352.)

FOLGER, J. This action is brought against the defendant as the maker of a promissory note. He did write and sign the note, and put it in the hands of the payees named in it, for their use. This is the form of it : "New York, November 14, 1874. $300. Three months after date I promise to pay to the order of Messrs. Bailey & Gilbert three hundred dollars at the New York National Exchange Bank, value received."

His defense to the action is, that the note was made by him for the accommodation of the payees named in it ; that it was by him loaned to them, without any consideration received by him from them ; and that it was transferred by them to the assignor of the plaintiff, at a greater rate of discount or interest than that lawful in this State. The facts of the case sustain these allegations of his defense. It is also fact ; that he signed the note at the city of his residence and place of business in this State ; that it is dated there ; that it is made payable there ; that it was put in the hands of the payees there. Nor is there anything to show that the maker knew, or intended, or contemplated that it was to be taken out of this State for its first use. There is another fact, however ; and it is relied upon by the plaintiff to overcome the defense of the defendant. It is ; that the note first passed into the hands of a holder for a consideration,

and thus, as is alleged, had inception, in the State of Massachusetts; that it was in that State that the discount or interest was taken, greater than that lawful in this State; and that it was lawful in that State to take that rate.

Upon these facts arise the questions of law; in which State was the note made; and if it was made in the State of Massachusetts, is it not valid everywhere? It may be granted that the note was made in Massachusetts, and that if the law of the place of execution is to govern, that the note is valid and enforceable in this State.

It would seem, at first sight at least, that the other of these questions had been settled in the negative, by this court. *Jewell* v. *Wright* (30 N. Y., 259) was an action on a promissory note, signed by Wright in this State, to the order of Dunlap, who wrote his name upon the back of it in this State. The note was by its terms payable at a bank in this State. It was put in the hands of Taylor in this State for his accommodation, without consideration from him therefor. Taylor took it into the State of Connecticut, and got it discounted there, at a rate not lawful in this State. It does not appear that Wright or Dunlap knew or intended, or thought that Taylor would take it out of this State to make the first use of it in Connecticut. Thus the case is the brother of that before us. In one feature of it, it is not like. The rate of discount was unlawful in the State in which the note was first used, as well as in this State. But, as will appear further on, this difference was not material; and the questions of law were the same as those at which we are looking. Judgment went for the plaintiff, the holder of the note, in the courts below; but it was reversed in this court, and the case sent back. This court conceded that the law is, that a contract is to be governed by the law of the place where it is made, if it is not by its terms to be performed elsewhere; but held, that if by its terms it is to be performed in a State other than that in which it is made, the law of the State in which it is by its terms to be performed, must govern. Just this was determined: that

where a note is signed in this State, by a resident thereof, at his place of business here, bearing date here, a place here fixed in it as the place of payment of it; no rate of interest named it, no intention of the maker existing that it will be taken elsewhere for discount; it is invalid by the law of this State, when it was first negotiated in another State at a rate of discount greater than that allowed by the usury laws of this State. And these are exactly the facts in the case now in hand.

It is said, however, that the case of *Jewell* v. *Wright* has been so much questioned by bar and bench, as not to be a reliable precedent. One criticism upon it is; that as the note there was obnoxious to the usury law of Connecticut, as well as of New York, there was no need of the reasoning of the opinion, resting the judgment upon the rule that the law of the place of performance must govern; and that hence the opinion rendered was *obiter*. This criticism is not well founded. The usury law of Connecticut is not as fatal as that of this State. By the law of that State, the contract is not utterly void, but void only as to the whole interest reserved or taken. (*Fisher* v. *Bidwell*, 27 Conn., 363.) So that, though the opinion in *Jewell* v. *Wright* starts with saying that the note was negotiated at a rate of interest illegal both in Connecticut and New York, it is correct in further stating the main question in the case to be, whether the laws of the former or the latter State are to control as to the defense of usury. In the one case, the plaintiff would lose only a sum equal to the amount of interest taken or reserved. In the other, he would lose the whole amount of the note.

We must say then, in the case before us, whether we will follow *Jewell* v. *Wright*, as an authoritative adjudication, binding upon us; or whether it is so plainly unsound in its declaration of what is the law, and in its application of it to the facts there shown, as that it should be overruled, and the proper rule for a like state of facts be now put forth.

The rule declared in that case is, that a personal contract is to be governed by the laws of the country which is named in it as the place for the performance of it. And in stating this as the rule, it was conceded that the law of the place where the contract is made governs the contract, when it is not by its terms to be performed elsewhere. This concession might have been made with a limitation; for no State is bound, or ought to enforce or hold valid, in its courts of justice, a contract which is injurious to its public rights, offends its morals, contravenes its policy, or violates a public law : (2 Kent,* 458 ; *Varnum* v. *Camp,* 1 Green [N. J.], 326.) But passing that; this court in *Jewell* v. *Wright* announced not a new principle, or one that is not now prevalent. The general rule is and has been, that where the contract either expressly or tacitly is to be performed in a given country, there the presumed intention of the parties is that it is to be governed by the law of the place of performance, as to its validity, nature, obligation, and interpretation : (Story on Conflict of Laws, § 280, citing *Andrews* v. *Pond,* 13 Peters, 65; and 9 N. Y., 53, citing *Holman* v. *Johnson,* Cowp., 341.) This rule has been specially applied to the rate of interest to be allowed ; and it has been held that where a personal contract is expressly or by implication to be paid at a given place, and the rate is not fixed by the parties, interest is to be taken or reserved according to the law of the place where payment is to be made : (*Fanning* v. *Consequa,* 17 J. R., 511; *Scofield* v. *Day,* 20 id., 102; *De Wolf* v. *Johnson,* 10 Wheat., 367.) .It is said that such a rule of construction will not be applied if it will render the contract illegal ; for that construction will be given to a contract which will render it valid, if it can be reasonably done : (*Bowen* v. *Bradley, infra.*) But this remark has no application to the case in *Jewell* v. *Wright,* or to that before us. There and here, no question comes up of the rate of interest to be allowed upon a clause in a contract expressly providing for it, and for the rate of it. There and here, the note was silent as to interest, and the rate adopted on the

negotiation of it was more than the law of the place of performance allowed. Hence the only indication which the contract gives of the mind of the maker as to the rate of interest is in the phrase which specifies the place of payment, and the indication from that is of a rate lawful at that place.

Nor did *Jewell* v. *Wright* go to judgment without reliance upon authority. *Jacks* v. *Nichols* (5 N. Y., 178) states as a ground of the decision in it, that the contract was to be performed in this State (see page 185) ; so *Curtis* v. *Leavitt* (15 N. Y., 9, 227) recognizes the rule, and *Cutler* v. *Wright* (22 N. Y., 472) is much in point. The note there, made and delivered in New York, reserved, in terms, interest at the rate of eight per cent ; but as it was dated and made payable in Florida, it was held to be a Florida contract, and not to be governed by the laws of this State on a defense of usury.

It is claimed that *Jewell* v. *Wright* has been so seriously questioned as to impair its authority, and to throw doubt upon the soundness of the rule it gives out ; and that there are adjudications which stand in opposition to it. It is proper to look at the cases which are thought to have that effect. The most prominent is that of *Tilden* v. *Blair* (21 Wall., 241). There are facts in that case which are not in *Jewell* v. *Wright*, nor in that before us. The action in that case was brought in Illinois, on a draft drawn and dated there by a resident there at his place of business, and though accepted and made payable in New York by the drawees, residents of New York, it was returned by the acceptors to to the drawer in Illinois, for the purpose and with the intention on their part that it should be negotiated there by him, the understanding being that the draft was to be discounted by a bank in Chicago, and that the drawer should take it up at maturity. Now, the controlling fact in *Tilden* v. *Blair*, and so stated to be by the United States Supreme Court (see page 247), is that before the acceptance had any operation, before the instrument became a bill, the acceptors sent it to Illinois, for the purpose of having it negotiated in that

State — " negotiated," says the court, " it must be presumed, at such a rate of discount as by the law of that State was allowable." The ruling consideration in that case was the intention of the acceptors that the draft should be used in Illinois, as a contract of that State, in accordance with its laws; and that the naming of New York city as the place of payment was an incidental circumstance, for the convenience of the acceptors, or to help the negotiation, and not as an essential part of the contract, or with the intent to affix a legal consequence to the instrument. There is no fact in *Jewell* v. *Wright*, nor in the case in hand, to show an intent in the maker of the note to give authority to deal with it otherwise than as the law of this State would allow, nor was there appearance of authority so to do. He had framed his writing so that it declared that the law of this State was to be the law of its nature and obligation. He made a place in this State the place for the performance of it, and there was nought in the writing, nor in his conduct outside of the writing, which would allow a belief or an inference that he did not mean that part of it to be an essential part of it, and to draw after it a legal consequence. The only authority he gave to the payees was to be found in the fact that the latter by his act had in possession that writing, negotiable by its terms when indorsed by the payee, yet looking to the law of this State for its construction and validity. No one had a right to assume therefrom that the maker's gift of power was greater or other than that.

Another case is *Bank of Georgia* v. *Lewin* (45 Barb., 340). It does not refer to *Jewell* v. *Wright*, much less question it. Indeed the opinions in the two cases are from the same judge. The same fact is in it as is in *Tilden* v. *Blair ;* that it was the purpose of all parties to the draft, when they made and accepted it, that it should be first used in another State than this wherein it was made payable, and that the place of payment named in it might be inferred to be incidental and not essential.

*Bowen* v. *Bradley* (9 Abb. Pr. R. [N. S.], 395), decided in

a court inferior to that which gave the adjudication in *Jewell* v. *Wright*, yet deliberately disregards it, and pronounces it contrary to law, to sound reason and the necessity of commerce. There was room in *Bowen* v. *Bradley*, for the same reason that controlled the decision in *Tilden* v. *Blair ;* and the case might well have gone upon the ground that both the maker and indorser of the note knew and meant that it would first be used in Illinois, and in accordance with the laws of that State. But the court chose to put it upon the ground that the law is different from what it is declared to be in *Jewell* v. *Wright.* This conclusion was sought to be sustained by reason and authority. It is first declared that this court failed to distinguish between the principles by which the validity of purely personal contracts is to be tested, and the rules which have been adopted for the interpretation of them. The court in *Bowen* v. *Bradley*, must then have been of the opinion, that the rule that a contract must be governed by the law of the place where it is to be performed, is a rule of interpretation, and not one by which to determine the validity of the contract ; for as we have shown, it was that rule upon which *Jewell* v. *Wright* went ; and we have shown that this rule is operative not only in interpretation, but in an inquiry as to validity, nature and obligation : (Story on Conf. Laws, § 280, *supra ; Andrews* v. *Pond, supra.*) *Bowen* v. *Bradley* then proceeds to state what are the rules of law as to the validity of a purely personal contract : First, that if valid where it is made and to be performed, it is valid everywhere ; which may be conceded : Second, if it be made in a State or country where it would be lawful to do all the acts which are agreed by it to be done, but provides that one or more of such acts shall be done in another State or country in violation of its known laws, the courts (at least of the latter) will not enforce the contract. It then proceeds to state rules of interpretation : First, that such contracts are to be construed according to the intention of the parties. Second, that if a different intention is not apparent, the intent will be declared to be according to the law of the

place of performance, and that thus the law of the place of performance is silently incorporated into the contract; and as an example it is said, if a note payable with interest, with-. out naming the rate, is made or delivered in one State, by its terms payable in another State, the note by force of the rule of interpretation is to be paid at the rate of interest of the State where payable. The opinion then holds that such a construction would not be admitted if it would make the note invalid. Now a reading of these rules by the side of the facts of the case fails to show an error in the decision in *Jewell* v. *Wright.* Surely the place where the contract there, and here, was to be performed was the State of New York; and surely a note, upon the discount or negotiation of which more than seven per centum per annum was taken without the agreement of the maker, was not a valid contract by the law of this State. Surely the act of payment in that, and in this case, was to be done in this State; it could not be done without paying more for the loan or forbearance of money than at the rate just named. That payment was then an act in known violation of the laws of this State; and why then should the courts of this State enforce the doing of that act? The contract in *Jewell* v. *Wright*, and in our case, makes apparent no intention of the maker for a greater rate of interest than that lawful in this State. In neither contract is the matter of interest named. Is not then the place of performance named in it, the place whose law must be presumed to have been in the intention of the makers as that which should control the rate to be taken? There can be no pretence that the meaning of the parties was not well expressed in the note in *Jewell* v. *Wright*, and was not to be fully understood therefrom, in respect to the thing to be done and the place where it was to be done. It was to pay a certain sum of money at a bank in the city of Lockport in this State. But it must be lawful to do that thing there, or the law of this State would not permit it, nor would its courts enforce it. It was not lawful there, to repay money for the loan of which a greater rate of discount was

taken than seven per centum per annum. Plainly then the plaintiff in that case sought from the defendant through the courts of this State that he do an act which he was forbidden to do by our law. When the assignee of the plaintiff discounted the note, he knew that he took an agreement to do that act in this State; and he was bound to know that it was an act repugnant to the laws thereof; *Cambioso* v. *Maffett* (2 Wash., 104); and in legal effect it was the same as if he did know and of intent violated those laws. It is said that there is no violation of the law of this State in the simple act of paying money in solution of a promise to do so, and that as the act of taking a discount at a rate unlawful by our law was not done in this State, no act against its law was done or to be done here. But the act of taking the unlawful discount is not complete until the note has been paid. It rests in agreement until then. When the note has been paid at the place of payment and the amount gone to the credit of the holder, then is the act first complete, and the law is then also violated, and within this State. It would be a novel and startling doctrine that the usury laws of a State could not be violated by a transaction agreed upon outside is bounds.

*Bowen* v. *Bradley* seeks support in the case of *Kentucky* v. *Bassford* (6 Hill, 526); and the same case is cited on the points of the plaintiff in our case, and at the circuit. That case goes, however, upon the expressed ground that whether the bond sued upon was made in Kentucky or New York, the performance of it was to be made in Kentucky, and that in such case, the construction and effect of it are the same as if it had been made in that State. Nor does *Hyde* v. *Goodnow* (3 N. Y., 226), or *Merchants' Bank* v. *Spalding* (9 N. Y., 53), put forth any rule differing from that in *Jewell* v. *Wright*.

Neither the discussion in *Bowen* v. *Bradley*, nor the authorities cited there, show error in the rule put forth in *Jewell* v. *Wright*. Citations are made to show that the judge who delivered the opinion in *Jewell* v. *Wright* joined in decisions

claimed to be irreconcilable therewith ; (45 Barb., *supra*). If there be any weight in that, it is neutralized by his later citation of *Jewell* v. *Wright*, as of prevalent authority, *Hildreth* v. *Shepard* (65 Barb., 269).

The case of *National Bank* v. *Morris* (1 Hun, 680), while it doubts *Jewell* v. *Wright*, does not depart from it. The same reason for the decision existed as in *Tilden* v. *Blair* (*supra*), while the ground upon which it was placed was that found in *Rosa* v. *Butterfield* (33 N. Y., 665).

Another case is *Wayne Co. Sav. Bank* v. *Low* (6 Abb. [N. C.], 76). The opinion in that case does not profess to add much to the reasoning of the court in *Bowen* v. *Bradley*, *supra*. There is the same assumption that the decision in *Jewell* v. *Wright* was hasty and ill-considered ; an assumption unwarranted, in face of the fact that there was a dissenting opinion read in it, whence it is apparent that both sides of the question were presented, not only upon the argument of the case, but upon the consideration and discussion of it by the court. The opinion in 6 Abb. N. C. (*supra*), concedes that where no rate of interest is fixed by the contract the rate is that lawful at the place of performance ; but denies that this is the rule in respect to taking usurious interest. We cannot but think that the learned court ignored what is the conceded general rule, that the place fixed by the contract for the performance of it is an essential part of the agreement and gives the law which is to determine its validity. A note payable in New York, naming no rate of interest, is discounted in Massachusetts, at a rate usurious and unlawful in New York. If the maker pays that note in New York, and the holder receives payment there, usury is given and taken, an act is done by them unlawful in New York, *malum prohibitum*, and for which the penalty of a misdemeanor is incurred. It matters not where the the contract is made ; it is agreed that it be carried out in New York ; and thus it is at the time of the making agreed that an act shall be done in violation of the law of the place where it is to be done ; and then the courts of that place are invoked to

enforce the doing of an act which the law of their sovereignty forbids. We refrain from any consideration of the facts in the case from 6th Abbott, for we know not but that it is on its way to us for review. There may be matter in it to distinguish it from *Jewell* v. *Wright*, and from the case before us.

In *Prov. Co. Sav. Bank* v. *Frost* (13 Nat. Bank Reg., 356), the maker of the note himself sent it into the other State for discount there in accord with its law; and it is upon that fact that that case went; and the judgment is based upon *Tilden* v. *Blair* (*supra*).

The case of *Scudder* v. *Union Nat. Bank* (1 Otto, 406), does not establish anything contrary to our views. The question there was, what jurisdiction should be sought for the law of the validity of a contract, when the validity of it was dependent upon the formalities alone with which it was formed. It was held that the *lex loci contractus* gave the rule; yet it was conceded that the law of the place of performance governed the incidents of payment, including that of the rate of interest when it was not specified. Some things are said in the opinion which, apart from the facts, seem to go farther.

These are all the cases brought to our notice in which adverse comment is made or implied upon the decision in *Jewell* v. *Wright*. The reasoning of them, in our judgment, fails to touch, or touching does not shake, that of the case criticised.

But it is claimed that that case is contrary to the following authoritative adjudications in this State. *Hosford* v. *Nichols* (1 Paige, 220), holds only that a contract for sale of lands in this State, made in this State, reserving interest at a rate lawful here, silent as to place of performance, may be performed in fact in another State, and that a mortgage on the same lands taken there in part payment, reserving the same rate of interest, though an unlawful rate there, will be enforced here. *Chapman* v. *Robertson* (6 Paige, 627), is a case often cited and relied upon; but it does not impugn the general rule, that the validity of a purely personal con-

tract is to be tried by the law of the place of its perform-
ance.    The learned chancellor concedes that the case would
have come clearly under that principle, if the contract in
suit had been only the personal contract of the defendant;
but he holds that as it was a mortgage, actually executed here,
by a resident here, upon lands here, for moneys loaned to be
used here, though to be repaid elsewhere, the law of this
State would fix the legality of the rate of interest reserved;
and he further reasons that the contract was partly made here
actually in reference to our laws, with an appeal to our courts
contemplated by the parties, if necessary.    The opinion in that
case has not escaped criticism :    " If viewed as the chancellor
interpreted the case, it is perhaps irreconcilable with other
cases and with general principles ; " (Story on Conflict of
Laws, § 293 *c*) ;    " it appears to me that the case was correctly
decided, but    *    *    *    upon principles and expositions to
which I cannot assent, and which appear to me inconsistent
with the general reasoning of the authorities ; " (id., note 3 ;
see also *Curtis* v. *Leavitt*, 15 N. Y., 88, 228.)    *Pratt* v. *Adams*
(7 Paige, 615, 636), holds in effect that a contract for a loan
of money may stipulate for a rate of interest lawful where
the contract is made, though greater than that where it is to
be performed, if it was not a means of evading the usury
law of the place of performance.    This is not the case before
us, nor the case in *Jewell* v. *Wright*.    The maker of the
note in those cases expressed no such stipulation in his con-
tract, nor did he give authority to make it outside the writ-
ten contract.    There is nothing in *Cook* v. *Litchfield* (9 N.
Y., 280) ; *Hyde* v. *Goodnow* (3 Comst., 271) ; *Lee* v. *Sel-
leck* (33 N. Y., 615) ; which militates with the reasoning or
the conclusions in *Jewell* v. *Wright*.

Citations are made from the reports of other States and
from text-books.    With the exception of *Depau* v. *Hum-
phreys* (8 Mart. [N. S.], 1), they make rather for than against
the principle stated and founded upon in *Jewell* v. *Wright*.
Thus in *Pecks* v. *Mayo* (14 Vt., 33), it is said that it is an
elementary principle, that all the incidents pertaining to the

validity and construction of contracts will be governed by the *lex loci contractus;* which term may indicate where the contract is virtually made according to the intent of the parties, that is, the place of its performance ; and that the general rule is, that the latter is the governing law of the contract. That was a case where the inquiry was, what law of interest should determine what damages were recoverable. So in *Pope* v. *Nickerson* (3 Story, 465), it is said : That in general the validity, the nature, the interpretation and the obligations of contracts are to be governed by the law of the place in which they are to be performed. *Depau* v. *Humphreys* (*supra*), was cited and approved of by the chancellor in *Chapman* v. *Robertson*, but is condemned by Story ; see Conflict of Laws, §§ 298 *et seq.*

We find nothing in the citations made to us, nor elsewhere, that shakes the general rule of law of this State, that a purely personal contract is to be governed by the law of the place where by its terms it is to be performed. We find that some cases have set up exceptions from that general rule. It is not needed that we assent or dissent. None of the exceptions are found in *Jewell* v. *Wright* or in the case before us. We are satisfied that the ground is stable on which the adjudication in that case rests. We follow it as an authoritative precedent and as well decided.

The judgment herein appealed from should be affirmed.

All concur, except RAPALLO and DANFORTH, JJ., dissenting.

Judgment affirmed.