## SUPREME COURT.

### MERCHANTS' NATIONAL BANK OF ST. PAUL agt. HENRY K. SOUTHWICK.

*Usury — Note drawn, dated, signed, delivered, made payable and first used in this state, but given for a precedent debt arising in another state—By what usury laws to be governed.*

A note drawn, dated, signed, delivered, made payable and first used in the state of New York, but given for a precedent debt arising in and owing to a resident of another state, is to be governed by the usury laws of New York, and not those of the other state.

*New York Circuit, August, 1884.*

Merchants' National Bank of St. Paul agt. Southwick.

MOTION by defendant for a new trial.

*L. B. Burmell*, for plaintiff.

*T. F. Wentworth*, for defendant.

VANN, *J.* — Upon the trial of this action it appeared that prior to March, 1882, the defendant had subscribed for stock of the Sioux Falls Water-Power Company, [a corporation organized under the laws of and carrying on its business in Dakota territory, to the amount of $10,000, and that certain relatives of his had subscribed for a like amount. Fifty per cent only had been paid upon these subscriptions, when, in March, 1882, one Elwell, the president and treasurer of the company, came to New York, with authority to collect the remainder and demand from the defendant the balance of his subscription. The defendant at first denied his liability, but was finally " convinced that he was probably liable, and agreed that he would admit a debt of the even sum of $10,000," which was the amount of the principal unpaid upon the subscriptions of himself and relatives. He thereupon drew a note at six months for $10,300, which included interest at six per cent, but Elwell refused to accept it, saying that he must have more interest than that. The defendant said that was the rate in this state, and then wrote another note, of which the following is a copy :

" $10,350. NEW YORK, *March* 27, 1882.

" Six months after date I promise to pay to the order of the Sioux Falls Water-Power Company, ten thousand three hundred and fifty dollars, at Hanover National Bank, New York, value received.

" H. K. SOUTHWICK."

The defendant delivered this note to Elwell in the city of New York, together with the certificates of stock and an agreement, of which the following is a copy :

Merchants' National Bank of St. Paul agt. Southwick.

"NEW YORK, *March* 27, 1882.

"Having this day borrowed of D. Elwell, treasurer of the Sioux Falls Water-Power Company, ten thousand dollars, and having given my note for said amount, with three hundred and fifty dollars interest added thereto, and having pledged the following certificates of the stocks of the said company, viz.:

| | |
|---|---|
| Cert. Sp. 28, Royal K. Southwick, 25 shares | $2,500 |
| Cert. Sp. 26, H. K. Southwick, 100 shares | 10,000 |
| Cert. Sp. 29, Joseph H. Southwick, 25 shares | 2,500 |
| Cert. Sp. 27, Joshua Buffen, 50 shares | 5,000 |

"For the payment of said loan I hereby authorize and empower said D. Elwell, treasurer, to sell said certificate of stock to the highest bidder, at public or private sale, on failure to pay said note at maturity.

"H. K. SOUTHWICK."

The note was subsequently discounted by the plaintiff, a national banking corporation of the state of Minnesota, by the laws of which state, as well as of the territory of Dakota, interest at the rate of seven per cent is permitted. At the time of such discount the stock certificates and said agreement were delivered to the plaintiff.

This action was brought to recover the amount of said note, and the defendant answered, setting up the defense of usury. There was a verdict for the plaintiff, and the defendant now moves for a new trial upon the ground, among others, that on the undisputed facts the court should have directed a verdict for the defendant, as requested at the trial. The question is whether a note drawn, dated, signed, delivered, made payable and first used in the state of New York, but given for a precedent debt arising in and owing to a resident of Dakota territory, is to be governed by the usury laws of New York or Dakota.

In *Jewell* agt. *Wright* (30 *N. Y.*, 259), it was held that where an accommodation note, in which the rate of interest

is not named, is dated, signed, delivered and made payable in this state, but has its inception by negotiation in another state, at a rate of interest usurious by the laws of this state, the laws of this state are to control as to the defense of usury.

In *Dickinson* agt. *Edwards* (77 *N. Y.*, 573), the case of *Jewell* agt. *Wright* was held to be an authoritative precedent and well decided; and further, that where an accommodation note is made in this state by a resident thereof, bearing date here, by its terms payable within the state, with no rate of interest specified and no intention of the maker existing that it will be taken elsewhere for discount, if it is first negotiated in another state, at a rate of interest lawful there, but greater than that allowed by the usury laws here, it is void.

In each of these cases the instrument was an accommodation note that had no inception until it was discounted in another state, where a different law prevailed in relation to the rate of interest, and it did not appear that there was any intention on the part of the maker of the note that it should be first used without this state. In *Jewell* agt. *Wright*, DAVIES, J., dissented, and in *Dickinson* agt. *Edwards*, RAPALLO and DANFORTH, JJ., dissented.

In *Wayne County Savings Bank* agt. *Low* (81 *N. Y.*, 566), it was held that the case of *Dickinson* agt. *Edwards* rests upon the ground that there was no evidence of knowledge or intention on the part of the maker of the note that it was to be used out of this state, and that in the absence of such proof it must be governed by the law of the place of payment; and, further, that where, in performance on an agreement made in Pennsylvania, a note actually written in that state but dated and made payable in New York, was made for the express purpose of being used in renewal of another note of the same amount then held in Pennsylvania, and was forwarded by the holder to the maker, a resident of New York, and signed by him in that state and there mailed by him to the holder in Pennsylvania, together with a check for the discount at a rate lawful in that state, but unlawful in

New York, was not usurious, upon the ground that it was executed to be held in Pennsylvania, the laws of that state must govern. All the judges concurred in this decision.

In *Tilden* agt. *Blair* (21 *Wall.*, 241), an accommodation draft, dated in Illinois, was by the acceptance made payable in New York, the place of residence of the acceptors, who, after accepting, returned the draft to the drawer in Illinois for the purpose and with the intention that it should be negotiated by him in that state and this was in fact done. It was held that it was to be regarded as a contract made in the State where the draft was dated and drawn, and to be governed by the usury laws of that state. The controlling fact in this case was that the acceptors intended that the draft should be used or have its inception in Illinois.

These are the leading and most recent cases cited by counsel upon either side, and they seem to establish the following principles :

That commercial paper is to be governed by the laws of the state where it is made, if it is not by its terms payable elsewhere; but if by its terms it is to be paid in a state other than that in which it is made, the laws of the state in which it is by its terms to be paid must govern ; except, in either case, where it is made to be first used in another state, the laws of that state must control.

Although in the case under consideration there was some evidence tending to show that the note in question was to be ultimately used without this state, still, the fact that it was intended to be first used in this state was not disputed. Not only was it drawn, dated, signed and made payable in New York, but it was also delivered and accepted in this state, and it was intended that it should be delivered and accepted when it was drawn. Both the actual and the contemplated inception were here. Its ultimate use is immaterial. It is the first use that controls. Had that been free from usury, no subsequent transfer could have been usurious. Even if it was given to pay a Dakota debt, or a debt governed by the laws of that

territory, still, when the payee accepted the note it entered into a new contract, and submitted itself to the laws of the place where that contract was made, and impliedly assented to their action upon it (*Story's Conflict of Laws, secs.* 261, 363). Upon the delivery of the note to Elwell, as treasurer of the Water-Power Company, it became a completed contract and operative as commercial paper. The title to it was in the company. Nothing remained to be done to enable the company to maintain an action upon it when it became due. It took the place of the Dakota debt. A New York contract was by the voluntary action of the parties substituted for the Dakota contract. The laws of New York must therefore govern in its enforcement.

The motion for a new trial is granted, with costs to abide event.