Davis, P. J. (dissenting).
It is due to the elaborate and able opinion of my brother Daniels that I should state the reasons that prevent my concurrence in his views and conclusions. This I shall do briefly and so far as practicable without elaboration. I agree that the statute is to be so construed as to harmonize with the provision of the constitution, and that the use of the words “ shall appoint,” as they appear in the statute, does not present a case of excess of authority by the legislature, because the constitution uses the words “ may appoint ” On the contrary, it is the duty of the courts to regard these several phrases as expressing the same idea, to wit, the duty of the general term of the supreme court to carry out the plan of the provision of the constitution whenever an appropriate case for its execution is presented to the court. Deither phrase was used for the purpose of conferring •on the court any power beyond that essential to set in motion the machinery contemplated and authorized by the constitution. The provision of the constitution was intended to interdict absolutely all special laws for the creation of such railroad corporations as are within its description and within the mischiefs aimed to be prevented, and at the same time to provide by general laws for an effective mode of securing the construction of railroads by corporations created thereunder whenever the public exigencies or necessities demand. For the construction of street railroads two things were made primarily essential; first, the consent of the public authorities having jurisdiction of the streets to be occupied; second, *381 the consent of the owners of the real property abutting on the several streets to be affected. But as it was manifest that it might occur that the abutting owners might refuse assent owing to real or supposed local injuries in cases in which the greater public interest would require the construction of the road, notwithstanding such refusal, the constitution provided for such cases by creating a special forum in which the question whether the railroad ought to be built notwithstanding the refusal could be fully and fairly tried, and in which forum such owners and all parties interested in the general question should be entitled to be heard, in and by all the familiar modes of trials of questions of fact, before such a body, and whose report and determination, if favorable to the construction, when confirmed by the general term, should stand in place of the consent of such owners. Power was therefore conferred by the constitution upon the general term of the supreme court, in a case where the consent of a majority of the owners along a street in the line of the proposed railroad could not be obtained, upon proper'presentation of that fact, to appoint three suitable commissioners to hear, try and determine the question whether the road ought to be constructed notwithstanding the inability to procure such consent. The scheme is a very simple one. It confers upon the court primarily a naked power of appointment of commissioners for a clearly specific purpose. It gives no power to the court to hear, try or determine in the first instance the question that is to be sent to commissioners. That power is given to the commissioners alone; and it is only when their report, with the evidence laid before them and the reasons assigned by them for their conclusion, are brought before the court for confirmation that the plan of the constitution permits the court to exercise jurisdiction or discretion over the question submitted to the commissioners, whether the road ought to be constructed notwithstanding the antagonism of abutting owners.
It is thought and argued that because notice is required to *382 be given to the non-consenting owners of the application for commissioners, therefore such owners may be heard by the general term,.not only on the question whether a case is shown by the petitioners in which the constitution authorizes and directs the appointment of commissioners, and upon the question who are suitable persons to be appointed, but also on the very question which the constitution directs to be.submitted to the commissioners. In other words, it is claimed that the constitution is to be read as though it provided that the question whether the road ought to be constructed without the consent of the abutting owners shall be sent to commissioners, if the court shall first decide on a hearing of the parties interested that it ought to be so built. That this is not the meaning of the constitution is manifest to my mind, because no adequate means are provided for such a hearing by the general term in the first instance. Nothing is provided for but the presentation by proper proofs of the fact that a 'majority of abutting owners have refused to consent, or rather that their consent cannot be obtained, and that they have been duly notified of the application for the appointment of commissioners. These two facts being satisfactorily established clothe the general term with jurisdiction to do only what the constitution enjoins, to wit, to appoint commissioners. The owners and .other parties notified, or being in interest, may come in and be heard on the questions thus presented. They may show that consents1 have been given, and therefore no commissioners are necessary, or that consents have not been properly applied for or have not been refused; or any material facts bearing upon those questions; or any fact touching the suitability of persons named or to be named as commissioners. In other words, they may contest the questions presented by the application and material to the right claimed by the petitioners to have commissioners appointed, on the ground of inability to get consent of a majority of owners along the street; but they are not at liberty to try before the court on their ex parte affidavits, or otherwise, the question to *383 be tried under the constitution by the commissioners alone. The court are not commissioners, and are not recognized as such by the constitution or the law. .They are at this stage of the proceeding a mere part of the scheme of the constitution through which commissioners are to be called into existence and set in motion to hear and determine the grave question which the constitution commits primarily to them aloné. The general term, in doing this, act administerially rather than judicially. For the court to undertake to try and decide the question ivhether or not the railroad ought to be constructed notwithstanding the refusal of owners as one that shall control the appointment of commissioners, as it may hold upon it favorably or adversely to the construction of the road, is, in my opinion, mere usurpation. I am not considering whether or not my brother Daniels has reached a correct conclusion, upon the ex parte affidavits before us, that the railroad of petitioners ought not to be constructed, because, firstly, I think the court has no power, at this stage of the proceedings, to pass upon that question ; secondly, if it had power it ought not tobe exercised upon ex parte affidavits, and without the trial contenrplated by the constitution, at which witness can be orally heard and examined, and the opportunity given to both or all sides to present proofs, reasons and arguments, as they shall be advised. The trial of the general term on the papers now before it, resulting in a refusal to appoint commissioners, seems to me a mere travesty of the scheme of the constitution, which we are bound to respect and protect. The reasons urged for our denial of the appointment by my learned brother may with great propriety be urged before the commissioners, and be held, if they think them well founded, sufficient to warrant an adverse report; but we have nothing to do with them in the form of triers till they come before us as the report of the commissioners, with the proofs duly taken first passed upon by them. This was the course taken by the general term in the Broadway railroad case, and after the •commissioners had made their report the general term pro *384 ceeded to consider its propriety upon the evidence and facts reported, and to affirm the same against my dissent. The same course as to the form of procedure should be taken here, for this court will ultimately, on the coming in of the report, &c., have jurisdiction to confirm or reject the conclusions of the- commissioners as shall seem equitable and just to its constitutional discretion. But it is urged, and elaborately argued, that the general term should deny the appointment of commissioners, because it appears that other-street railroads are constructed and in operation upon some other portions of the projected route of the petitioners, and it is not shown that they have consented to the construction of the petitioners’ road along the portions of the route so occupied by such other street railroads. It is first to be observed that the existence of such roads is in itself no objection to the construction of other roads. The sting of death is supposed to be in the want of the consent to construct another road in the same street. Affidavits are produced to show that such consent has not been obtained, and as the affiants believe will not be given. There is nothing in the law to make it essential to obtain such consent before it shall be tried, determined by commissioners whether the railroad ought to be constructed, notwithstanding the refusal of consent by abutting owners of some street or streets on its route; nor is that fact any valid reason for refusing to appoint, because, non constat, that after it is found (if it shall be) that the road ought to be built, the other railroads will persist in refusing consent. The presumption ought to be that when it is shown that the public interest requires that another railroad should be constructed to accommodate another route, the mere fact that in doing so it must pass along some portion of a street already occupied by an existing railroad will not be seized upon by the latter company to defeat a public demand. But the argument stands upon the popular faith that a corporation of this character is a concentration of human selfishness freed by law from all moral responsibilities, and therefore the present occu *385 pying railroads will withhold consent forever. This assumption is easily overthrown when the fact is recalled to mind that no such corporation was ever known to stand out long against its own interests; and whenever it is made to appear that it is for the interests of the occupying railroads to consent, those companies will speedily show that “ one refusal’s no rebuff.”
It is the right, therefore, of the petitioners, if they can do so, to put themselves in the position to apply for the consent of the other railroads in an effectual way, and test the question whether it can be rightfully refused or cannot be obtained by suitable arguments or arrangements. To treat the assertion made on ex parte affidavits that such consent cannot be obtained as conclusive of all right of a newly projected railroad to construct a public improvement is, in my judgment, against public policy, and eminently injurious to all improvements. It is to establish by a judicial act a most dangerous and fatal monopoly, which may be wise in this case, but in some cases would result in vesting an inefficient and contemptible railroad, which has lawful possession of a few rods of a street through which a most important public improvement must pass, with power to defeat and forever prevent its construction, and also from trying the question whether or not it ought to be constructed in the mode pi’ovided by the constitution. The petty horse railroads of this city ought to have no such absolutely controlling power. Their modes of locomotion are destined ere long to give way to more rapid, cleanly and healthy kinds of travel, to the relief both of man and beast on the cars, and to the great advantage of the traffic and commerce of the city and the well being of its citizens. I am not content to hold that a constitutional proceeding by a newly projected railroad corporation to try a question affecting one street, however important it may be, can be defeated altogether by the present refusal of a railroad now in possession of a portion of some street on its general route. The rule sought to be applied to this case will neces *386 sarily have that effect in all cases; and ought not, therefore, to be applied. For nothing is more injurious to public interests than to clothe our present street railroads with an absolute veto of all the probable or possible advances of science and invention in the modes of using public streets.
I do not doubt that this objection, with all others suggested, may be presented to the commissioners, who will have full opportunity to examine into all the force and effect that should be allowed to it; and that it may, if the facts of the case seem suitable, be deemed by them a sufficient reason for an adverse report (in which case this court can review their conclusion); but it ought not to be established as a fatal bar to a motion for an opportunity to be heard before a commission on that and the other questions involved in the application.
If we hold in accordance with the views expressed and urged by my brother Daniels, it will be of no consequence that every person owning lands abutting the street or part of a street occupied by the non-consenting railroad has consented and is anxious to have the projected road constructed, or'that the street is so wide that both can be amply accommodated without injury to either, or that the new road will accommodate vast numbers of people, while the old one is a mere nuisance to the general public. For the decision will clothe it under the law with a monopoly gross and odious — a chartered counterpart of the fabled “ dog in the manger.”
I do not now discuss what I consider to be a very grave question, whether the legislature has power under the constitutional provision to turn over to any existing corporation the absolute and final right to say whether or not a like corporation may be created and exist for the public benefit. What is done by the act under consideration is to empower one corporation organized for a public use and authorized to occupy a public street in the exercise of its functions to declare that under no circumstances of public necessity, though all the public authorities having jurisdiction of the street consent, and all the people interested in the subject-matter agree to its *387 benefit and necessity, shall any other railroad occupy any portion of the same street. It is true the legislature is omnipotent in legislation where not expressly or by necessary inference restrained by the constitution. But legislating by itself is one thing and making over its power of legislation to another body or corporation is another and different tiling. And especially is this so where the power conferred upon a corporation is to declare and make itself an absolute monopoly to take and hold against all comers the right to use a public street when the interests of the public require its use to be extended to another similar corporation. The legislature may undoubtedly enact by law that but one railroad shall exist in any one street; but it may well be doubted if it can enact that an existing corporation shall have the power of absolute control of that same question. The point would be sharply presented if in enacting the general railroad law the legislature had enacted that no railroad parallel to that of the Hudson River and New York Central Railroad Company should ever be constructed from New York to Buffalo without the consent of that corporation. Such an abdication of legislative functions would be handing over to a railroad corporation a most important legislative power, which the constitution requires to be exercised by the legislature only, and would in spirit be strictly hostile to that provision of the constitution which forbids railroads to be constructed by special law, but allows their construction under the general law, and prescribes the mode of obtaining consent of owners and the process to be substituted for such consent for determining whether they ought to be built. To subordinate the constitutional provision for meeting the demands of public interest and necessities by the construction of street or other railroads to the will of existing corporations with which they may come into competition is a mockery of its plain intention; for under the general laws authorized by the constitution the question must always be what do the public interest require, and not what does some existing corporate monopoly consent to. The con *388 stitution intended to open such questions by general laws to all the people, and not to shut them forever for the benefit of existing corporations, and legislation to accomplish that defeats the intent and object of the constitution. I am not able, therefore, to concur with my brethren. On the contrary, I I think the only subject for the general term to pass upon now is whether the petitioner has shown that a majority of owners along that part of the route under consideration have refused to consent to the construction of the petitioner’s railroad.
The commissioners must, in the first instance, take care of all these questions, subject, of course, to the power of the general term, which is most ample to review their report whenever it comes in as shall then appear to be just and equitable. It is, I think, well settled law that where a duty to appoint commissioners to hear and determine a specified question is conferred by statute upon a court or any other body, upon the presentation of certain facts, the duty is so far administrative in its nature that the obligation becomes imperative, even though the language used by the statute might, under other circumstances, be regarded as conferring a mere discretion (People agt. Supervisors, 68 N. Y., 115 ; Haggadorn agt. Runx, 77 N. Y., 583; People agt. Supervisors, 51 N. Y., 401).
Such action does not, in any sense, permit the appointing body (where authority to review the action of the commissioners is conférred), upon any question whatever beyond that of the sufficiency of the proofs showing that the fact exists, which authorizes the court or body to appoint commissioners. I think the affidavits presented in this case do show that the consent of a majority of the property owners of that part of the route of the petitioners’ proposed road affected by this proceeding cannot be obtained, and the petitioners are entitled to have commissioners appointed. For these reasons I dissent from the denial of the motion.